# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3589

_____

United States of America

*Plaintiff - Appellee*

v.

Kevin P. Carson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Western Division

_____

Submitted: November 12, 2018
Filed: May 10, 2019

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Kevin Carson pled guilty to the receipt, possession, and attempted distribution of child pornography. The district court[1] sentenced Carson to 20 years of imprisonment followed by a life term of supervised release. Carson appeals, arguing

_____

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

the district court failed to explain the basis for his life term of supervised release and erred in imposing certain special conditions on his supervision.  We affirm.

I.

In 2013, an FBI officer downloaded child pornography from two IP addresses assigned to a residence associated with Carson.  FBI officers executed a search warrant at the residence, where Carson admitted to using a file sharing program to download and share child pornography.  He also admitted to using his cellphone to take pictures of himself and a sixteen-year-old girl having sex.  The officers seized Carson's electronics (a laptop, cell phone, and hard drive), on which they discovered 593 still images and 99 videos mostly depicting child bondage and bestiality, including a horrifying image of a female infant being raped by an adult male.  Carson also later admitted to exchanging sexually-explicit photos with five girls between the ages of fourteen and seventeen and emailing child pornography to a sixth girl.

Carson pled guilty to one count of receiving child pornography and two counts of attempting to distribute child pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4).  The district court imposed the statutory maximum prison term on each count but allowed them to run concurrently, resulting in a total prison term of 20 years — 10 years below Carson's advisory range under the U.S. Sentencing Guidelines Manual (the "Guidelines").  The district court also imposed a life term of supervised release with 13 standard and 17 special conditions.  Carson appeals the life term of supervised release and three of the special conditions.

II.

A.

Carson argues the district court committed procedural error by imposing a life term of supervised release without considering the relevant sentencing factors under 18 U.S.C. § 3553(a) and without explaining the basis for so long a term.  Carson

notes that while the district court considered several § 3553(a) factors in imposing his term of imprisonment, the district court failed to provide any explanation for imposing a lifetime term of supervised release.

Carson did not raise this objection before the district court, so our review on appeal is for plain error. *United States v. Moore*, 565 F.3d 435, 437 (8th Cir. 2009). "To qualify for relief under the plain error standard, [Carson] must show that the district court committed an error that is plain, that affects his substantial rights, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Mayo*, 642 F.3d 628, 631 (8th Cir. 2011).

Carson's argument overlooks the fact "[t]he term of supervised release is part of a defendant's sentence." *United States v. James*, 792 F.3d 962, 967 (8th Cir. 2015); *see also* 18 U.S.C. § 3583(a) (stating a court may include a requirement of supervised release "as part of the sentence"). Indeed, federal law provides that in determining the length of supervised release, a district court must consider many of the same § 3553(a) factors underlying a defendant's term of imprisonment, including the nature and circumstances of the offense, the history and characteristics of the defendant, the need to protect the public, and the need to provide the defendant with effective correctional treatment. 18 U.S.C. §§ 3553(a), 3583(c). We therefore agree with other circuits that have said "a single consideration of the sentencing factors" can "embrace[] both the incarceration sentence and the supervised release term," *United States v. Presto*, 498 F.3d 415, 419 (6th Cir. 2007), and "[o]ne overarching explanation often will provide an adequate explanation for the duration of supervised release," *United States v. Moose*, 893 F.3d 951, 960 (7th Cir. 2018).

Here, the district court's consideration of the § 3553(a) factors "applie[d] equally well" to both Carson's terms of imprisonment and supervised release. *Id*. The district court referenced the nature and circumstances of Carson's offense, noting his offense conduct included the "somewhat unique" aggravating factors of

distributing child pornography to a minor and engaging in a pattern of activity involving the sexual exploitation of minors. The district court discussed Carson's history and characteristics, granting a downward variance on the prison term because of Carson's lack of criminal history, the fact he pled guilty, and the fact he received a three-level reduction for acceptance of responsibility. The district court's sentence mirrored the recommendations it reviewed in the government's sentencing memorandum,[2] which analyzed five of the § 3553(a) factors. *See United States v. Gray*, 533 F.3d 942, 944 (8th Cir. 2008) ("[I]n determining whether the district court considered the relevant factors in a particular case, 'the context for the appellate court's review is the entire sentencing record, not merely the district court's statements at the hearing.'" (quoting *United States v. Perkins*, 526 F.3d 1107, 1111 (8th Cir. 2008))).

We conclude any error in this explanation was not plain — that is, "clear or obvious under current law." *United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011). The requisite explanation "may be relatively brief if the district court rests its decision on the Sentencing Commission's reasoning and 'decides simply to apply the Guidelines to a particular case.'" *United States v. Roberson*, 517 F.3d 990, 994 (8th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). Here, both federal law and the Guidelines authorize up to a life term of supervised release for Carson's offense conduct. *See* 18 U.S.C. § 3583(k); USSG § 5D1.2(b)(2). The Guidelines also include a policy statement providing that "[i]f the instant offense of conviction is a sex offense . . . the statutory maximum term of supervised release is *recommended*." USSG § 5D1.2(b) (Policy Statement) (emphasis added). Carson's life term of supervised release was a straightforward application of this policy.

In addition, it is not clear or obvious the district court failed to "set forth enough to satisfy [this] court that [it] . . . considered the parties' arguments and ha[d]

_____

[2]Carson did not submit his own sentencing memorandum.

-4-

a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita*, 551 U.S. at 356. At the sentencing hearing, Carson disputed the government's recommended 20 years of imprisonment but chose not to dispute the recommended life term of supervised release. The government made these recommendations in its sentencing memorandum, relying heavily on Carson's deviant sexual interest in child bondage and bestiality and his demonstrated willingness to sexually exploit minors — along with a concomitant likelihood of recidivism. The district court told the parties it had reviewed the government's memorandum, and Carson's counsel acknowledged that Carson might be on supervised release "perhaps for the rest of his life and he accepts that." In light of the entire sentencing record, we cannot say the district court's brief explanation for Carson's sentence (including his term of supervised release) was plainly erroneous.[3]

B.

Carson also challenges three special conditions of his supervised release: Special Condition 6, to the extent it prohibits "possess[ing]" or "hav[ing] under his control any matter that is pornographic/erotic"; Special Condition 14, which prohibits "possess[ing] or us[ing] any computer or electronic device with access to any 'on-line computer service' without the prior approval of the Probation Office"; and Special Condition 16, which prohibits "maintain[ing] or creat[ing] a user account on any social networking site . . . that allows access to persons under the age of 18, or allows for the exchange of sexually-explicit material, chat conversations, or instant messaging." Special Condition 16 also prohibits "view[ing] and/or access[ing] any web profile users under the age of 18."

---

[3]We disagree with Carson that his case is similar to the Sixth Circuit's decision in *United States v. Inman* because that court found plain error where the district court failed to explain why it imposed a life term of supervised release rather than the 10-year term *recommended by the parties*. 666 F.3d 1001, 1004 (6th Cir. 2012). Here Carson's life term of supervised release was consistent with his own expectations at sentencing and with the government's recommendation.

"Ordinarily, '[t]erms and conditions of supervised release are reviewed for abuse of discretion.'" *United States v. Demers*, 634 F.3d 982, 983 (8th Cir. 2011) (alteration in original) (quoting *United States v. Bender*, 566 F.3d 748, 751 (8th Cir. 2009)). However, since Carson did not object at sentencing to any of the special conditions he now challenges on appeal, we review his claims for plain error. *Id*.

1.

Carson first argues that all three challenged conditions involve a greater deprivation of liberty than reasonably necessary and that Special Condition 6 is also unconstitutionally overbroad and vague. For example, he argues Special Condition 6 (banning possession of "any matter that is pornographic/erotic") reaches depictions of non-obscene nudity and material that merely alludes to sexual activity, in conflict with previous decisions of this court. *See, e.g.*, *United States v. Kelly*, 625 F.3d 516, 521–22 (8th Cir. 2010). He argues Special Condition 14 (effectively prohibiting internet access without prior approval from the probation office) cannot be applied for *life* to a mere possessor of child pornography. Finally, he argues Special Condition 16 (restricting social media access) conflicts with the Supreme Court's recent decision in *Packingham v. North Carolina* holding that a North Carolina statute making it a felony for registered sex offenders to access social media web sites violated the First Amendment. 137 S. Ct. 1730 (2017).

Our precedent forecloses Carson's challenge to Special Condition 6. We recently rejected the same overbreadth and vagueness challenges to a condition prohibiting a defendant from, among other things, "possess[ing]" or "us[ing]" "any form of erotica or pornographic materials." *See United States v. Sebert*, 899 F.3d 639, 641 (8th Cir. 2018). We have also previously deemed a condition involving a ban on viewing erotica as distinct from invalid bans on materials containing "nudity" (which could reach protected forms of art). *See United States v. Mefford*, 711 F.3d 923, 926–28 (8th Cir. 2013). We thus cannot say Special Condition 6 involves a greater deprivation of liberty than reasonably necessary. *See id.*

Our precedent also forecloses Carson's challenge to Special Condition 14. We have "identified two relevant factors for determining the propriety of a restriction on computer and internet use": (1) "whether there was evidence demonstrating 'that the defendant did more than merely possess child pornography,'" and (2) "whether the restriction amounts to a total ban on internet and computer use." *United States v. Goettsch*, 812 F.3d 1169, 1171 (8th Cir. 2016) (quoting *United States v. Ristine*, 335 F.3d 692, 696 (8th Cir. 2003)). Here, Carson admitted to exchanging sexually explicit photos with five girls younger than eighteen and emailing child pornography to a sixth girl. He also remains free to use internet-capable computers and electronics with permission from the probation office. We have consistently upheld this type of restriction under similar circumstances as part of a lifetime term of supervised release, *see United States v. Morais*, 670 F.3d 889, 891, 895–97 (8th Cir. 2012); *United States v. Munjak*, 669 F.3d 906, 907–08 (8th Cir. 2012); *Demers*, 634 F.3d at 983–85, and we see no basis for departing from these precedents here.

We next turn to Carson's argument that Special Condition 16 (the social media restriction) "suffers the same flaws as the North Carolina statute held to be unconstitutional in *Packingham*." The Supreme Court in *Packingham* considered the constitutionality of a statute prohibiting registered sex offenders from "access[ing] a commercial social networking Web site where the sex offender knows that the site permits minor children to become members" or from "creat[ing] or maintain[ing] personal Web pages" on such sites. *Packingham*, 137 S. Ct. at 1733 (quoting N.C. Gen. Stat. Ann. § 14-202.5(a), (e)). The Supreme Court held the statute burdened substantially more speech than necessary to further the government's interests in protecting minors from sexual abuse. *Id*. at 1737–38. The Court reasoned that "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights," given the importance of social media for accessing information and communicating with others. *Id*. at 1737. Carson argues his court-imposed inability to maintain or create a user account on any social media site falls squarely under the holding of *Packingham*.

-7-

We disagree. Several of our sister circuits have rejected a similar argument in challenges to supervised release conditions forbidding access to the internet — and effectively to social media sites — without prior approval or monitoring by a court or probation officer. *See United States v. Antczak*, 753 F. App'x. 705, 715 (11th Cir. 2018) (unpublished); *United States v. Halverson*, 897 F.3d 645, 657–58 (5th Cir. 2018); *United States v. Browder*, 866 F.3d 504, 511 n.26 (2d Cir. 2017); *United States v. Rock*, 863 F.3d 827, 831 (D.C. Cir. 2017). These courts have noted *Packingham* invalidated only a *post*-custodial restriction and expressed concern that the statute applied even to "persons who have already served their sentence." *Halverson*, 897 F.3d at 658 (quoting *Packingham*, 137 S. Ct. at 1737). Because supervised release is part of a defendant's sentence, *Packingham* does not render a district court's restriction on access to the internet during a term of supervised release plain error. *See id*.; *Rock*, 863 F.3d at 831. We find this reasoning applies with equal force here. Thus, even assuming the district court's prohibition on creating or maintaining a social media profile implicates the same First Amendment interests as a restriction on *accessing* social media altogether, the district court did not commit plain error by imposing Special Condition 16.

2.

Carson next argues the district court failed to support any of the challenged conditions with individualized findings. We have recognized that a "district court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements." *Poitra*, 648 F.3d at 889 (quoting *United States v. Wiedower*, 634 F.3d 490, 493 (8th Cir. 2011)). The relevant statutory requirements are found under 18 U.S.C. § 3583(d), which provides that each condition "be reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional needs," *Mayo*, 642 F.3d at 631 (citing 18 U.S.C. § 3583(d)(1)); involve no greater deprivation of

liberty than is reasonably necessary to deter criminal conduct, protect the public, and treat the defendant's criminal needs, *id*. (citing § 3583(d)(2)); and be "consistent with pertinent Sentencing Commission policy statements," *id*. (citing § 3583(d)(3)).

We agree with Carson that the district court plainly erred by failing to make any effort to support the challenged conditions (or any other special condition) with individualized findings. *See Poitra*, 648 F.3d at 889. However, Carson must still show the error affected his substantial rights. *Mayo*, 642 F.3d at 631. Where the basis for an imposed condition is "sufficiently evident" and "can be discerned" from the record, "reversal is not required by a lack of individualized findings." *United States v. Thompson*, 653 F.3d 688, 694 (8th Cir. 2011).

We find the reasons for the challenged conditions sufficiently evident from this record. Carson's seized electronics contained hundreds of downloaded images and videos mostly depicting child bondage and bestiality. These included depictions of an infant girl being raped by an adult male as well as prepubescent girls engaging in sex acts with adult males. Carson admitted to downloading and sharing child pornography over the internet. We have previously found similar facts rendered the basis for similar special conditions sufficiently evident. *See, e.g.*, *Thompson*, 653 F.3d at 693–94; *Munjak*, 669 F.3d at 908. Further, Carson admitted to exchanging sexually-explicit photographs with several girls younger than eighteen — at least one with whom he had a sexual relationship and another of whom he admitted meeting on a social media site. Accordingly, Carson's restrictions were "reasonably necessary to further the purposes of sentencing, including adequate deterrence and protection of the public from future crimes by the defendant." *Munjak*, 669 F.3d at 908. The district court's failure to make individualized findings did not affect Carson's substantial rights.

## III.

For the foregoing reasons, we affirm Carson's sentence.

GRASZ, Circuit Judge, concurring.

I concur in the court's judgment and join its opinion in full. As to Special Condition 6 (prohibiting Carson from possessing or controlling erotica), I concur only because I conclude it is required by precedent. I continue to disagree with that precedent for the reasons discussed in my concurring opinion in *Sebert*, 899 F.3d at 641–42 (Grasz, J., concurring).

KELLY, Circuit Judge, dissenting.

One of our primary roles in sentencing appeals is to correct procedural errors. And "meaningful appellate review" is possible only if the district court "adequately explain[s] the chosen sentence." Gall v. United States, 552 U.S. 38, 50 (2007). Here, the district court did not provide any explanation for why it chose to impose a lifetime term of supervised release or any of its seventeen special conditions. Rather than speculate from the district court's silence, I would vacate this portion of Carson's sentence and remand to allow the district court to provide that explanation.

A few particular aspects of the court's opinion give me pause. The first is its conclusion that the district court's evaluation of the § 3553(a) factors in determining the length of Carson's imprisonment also satisfied its obligations under § 3583(c). Section 3583(c) directs district courts to consider some, but not all, of the § 3553(a) factors when "determining the length of the term and the conditions of supervised release." Under certain circumstances, it may be appropriate for a district court to simply refer back to its previous analysis when explaining its decision to impose a particular supervised release term. But here, the district court's explanation for the incarceration portion of its sentence does not explain its chosen term of supervised release. For the prison term, the court varied downward from the bottom of the Guidelines range by ten years, largely based on Carson's mitigating factors, including that he was a first-time offender and had accepted responsibility for his offenses. The

court's explanation for its substantial downward variance does not readily explain its decision to impose the maximum possible term of supervised release. This is simply not a case where "[o]ne overarching explanation" adequately explains both aspects of the sentence. Moose, 893 F.3d at 960.[4]

The court also excuses the district court's plain error in failing to make any of the individualized findings necessary to justify its special conditions of supervised release. "When crafting a special condition of supervised release, the district court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements." Wiedower, 634 F.3d at 493 (cleaned up). Such findings are necessary to ensure that the conditions imposed are "reasonably related to § 3553(a) factors, involve no greater deprivation of liberty than is reasonably necessary, and are consistent with any pertinent policy statements issued by the United States Sentencing Commission." Goettsch, 812 F.3d at 1171 (quoting United States v. Koch, 625 F.3d 470, 481 (8th Cir. 2010)). The court reasons that the need for each of the three challenged special conditions is sufficiently evident from the record. I disagree.

Special Condition 14, for example, broadly prohibits Carson from possessing or using "any computer or electronic device with access to any 'on-line computer service' without the prior approval of the Probation Office."[5] While we have

_____

[4]This is also not a case where the district court merely provided a "relatively brief" explanation for its decision and "decide[d] simply to apply the Guidelines." Roberson, 517 F.3d at 994 (cleaned up). The district court provided *no* explanation for its supervised release term and *rejected* the Guidelines' recommended term of imprisonment.

[5]Special Condition 15, which Carson does not challenge, separately requires that Carson consent to having hardware or software installed on his computer to permit monitoring by the Probation Office.

previously upheld internet restrictions for offenders who distributed child pornography, we have been careful to tailor the restrictions to the offender's particular circumstances. See, e.g., United States v. Stults, 575 F.3d 834, 856 (8th Cir. 2009). Read literally, Carson could violate Special Condition 14 by accessing any number of internet-connected household devices, from thermostats to doorbells. I trust that the U.S. Probation Office will judiciously exercise its discretion in enforcing this prohibition. But the sheer breadth of discretion afforded to the Probation Office only underscores the need for the district court to conduct a careful, individualized inquiry before imposing a condition that some courts have described as "lifetime cybernetic banishment." United States v. Voelker, 489 F.3d 139, 148 (3d Cir. 2007).

Without any analysis by the district court, it is also hard to conclude that Special Condition 16 is justified. The court distinguishes Packingham, which invalidated a similar restriction on access to social media on First Amendment grounds, by limiting that case to post-custodial restrictions. But even if Special Condition 16 is not unconstitutional, it does not necessarily follow that the condition is justified in Carson's case. The condition specifically prohibits Carson from creating a user account on any "social networking site" that minors may access. The term "social networking site" is not defined, and in Packingham the Court acknowledged that the term "commercial social networking site" could potentially apply "not only to commonplace social media websites but also to websites as varied as Amazon.com, Washingtonpost.com, and Webmd.com." 137 S. Ct. at 1736. Again, I have confidence that the Probation Office would not take such an unreasonably broad view of Special Condition 16, but the condition's plain language offers little to circumscribe its discretion.

I do not minimize the seriousness of Carson's crimes. For those he will serve a twenty-year prison term followed by a lengthy term of supervised release. I also recognize the need to monitor Carson's conduct upon release. But Carson was thirty-

three at the time of his arrest, and his lifetime term of supervised release could very well last decades. We can only imagine the universe of internet-reliant electronic devices that will pervade everyday life by then. The length and conditions of Carson's supervised release may well be justified, but such punishment deserves, at minimum, some reasoned explanation from the sentencing court. Accordingly, I respectfully dissent.

———————————————————