

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 36753-3-III |
| | ) | |
| KYLE ROBERT SICKELS. | ) | OPINION PUBLISHED |
| | ) | IN PART |
| | ) | |

SIDDOWAY, J. — Kyle Sickels seeks relief from personal restraint in the form of an indeterminate sentence of 58.5 months to life and lifetime community custody for his conviction of second degree attempted rape of a child. He challenges community custody conditions and the trial court's refusal to consider imposing a special sex offender sentencing alternative (SSOSA).

We grant limited relief by directing the superior court to strike or modify five community custody conditions in the first, published portion of the opinion. The personal restraint petition (PRP) is otherwise dismissed.

FACTS AND PROCEDURAL BACKGROUND

Kyle Sickels was arrested as part of a sting operation in July 2018, after he responded to a Craigslist advertisement and arranged and appeared for what he expected to be a sexual encounter with a 13-year-old girl and her friend. He pleaded guilty to

second degree attempted rape of a child within a matter of weeks and was sentenced the following month.

A presentence investigation report was prepared and recounted Mr. Sickels's admission that in "the month prior to being charged with this crime he began masturbating twice a day and watching more pornography. On average, he stated he watches pornography about 3-4 times a week." PRP, Ex. 4, at 6. Mr. Sickels believed his viewing of pornography was unrelated to his offense.

The author of the presentence investigation report identified as sentencing options either a standard range sentence or a special sex offender sentencing alternative (SSOSA). He concluded that a SSOSA was not appropriate because Mr. Sickels had not had the required sex offender evaluation, had not been found amenable to treatment, and had not taken full responsibility for an offense that Mr. Sickels, while repentant, viewed as resulting from a "high level of entrapment." PRP, Ex. 4, at 8.

At sentencing, the State recommended the low end of the standard range as the minimum confinement term. It recommended that the court impose most of the conditions of community custody included within a January 2016 version of a form "Appendix H," although it stated that the prohibition on consuming alcohol was inappropriate since "[t]here [was] no indication in this case that alcohol was a precursor or in any way contributed to the offense." PRP, Ex. 2, at 4. The State also recommended omitting the condition that Mr. Sickels "'have no direct or indirect contact with the

2

victims of this offense,'" because "[t]he victims would be the State of Washington or the under-cover detectives." PRP, Ex. 2, at 4.

The sentencing court noted the suggestion in the presentence report that SSOSA was an option and disagreed, saying, "I'm not exactly sure how DOC[1] is missing the problem that the person has to have an established relation with the victim other than just the offense." PRP, Ex. 2, at 8. It observed that it "I don't know how a case like this would ever get over that, unless they changed the law." *Id.*

Mr. Sickels did not file a direct appeal but timely filed this petition.

ANALYSIS

In his pro se PRP, Mr. Sickels challenges seven of his community custody conditions, asks us to strike all of his nonmandatory conditions because they were not disclosed until after he had pleaded guilty, and contends that the trial court's rejection of a SSOSA was in error or was based on a statutory eligibility condition that violates his right to equal protection.

I.     CHALLENGES TO COMMUNITY CUSTODY CONDITIONS

Mr. Sickels challenges seven community custody conditions. The State concedes his right to relief in the case of conditions 10, 14, 21 and 22, the first two of which we can address summarily. The State agrees that since the sentencing court explicitly declined to prohibit Mr. Sickels from consuming alcohol, condition 10 need not require

---

[1] The Department of Corrections.

him to submit to breathanalysis.  It also agrees that condition 14, which prohibits

presently-childless Mr. Sickels from having contact with minors, should contain an

exception for any children he might father in the future.[2]  *Cf. United States v. Loy*, 237

F.3d 251, 270 (3d Cir. 2001) (construing a similar condition imposed on a then-childless

defendant as applying only to other people's children).  We accept the State's concessions

on those conditions and direct the court to make those modifications.

We decline to consider arguments Mr. Sickels raises for the first time in his reply

brief, including those to which he contends the State "open[ed] the door."  Reply to

State's Resp. to PRP (Pet'r's Reply Br.) at 3; *e.g.*, *Cowiche Canyon Conservancy v.

Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the

first time in a reply brief is too late to warrant consideration.").

We address his remaining challenges by category.

A.      *Statutory challenge: crime-relatedness*

When a court sentences a person to a term of community custody, RCW

9.94A.703 requires that it impose conditions of community custody.  In addition to its

identification of statutory conditions that are mandatory or waivable by the court, the

---

[2] Mr. Sickels makes other conclusory challenges to condition 14, but his argument that it should contain an exception for biological children is the only challenge that is sufficiently argued to warrant consideration.  RAP 16.10(d) incorporates RAP 10.3(6), which requires a party's opening brief to contain citations to legal authority.  We do not consider conclusory arguments that are unsupported by citation to authority.  *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2013).

statute gives trial courts discretion to order additional conditions, including compliance with any "crime-related prohibitions." RCW 9.94A.703(3)(f). A "'[c]rime-related prohibition' . . . prohibit[s] conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "'Directly related' includes conditions that are 'reasonably related' to the crime." *State v. Irwin*, 191 Wn. App. 644, 656, 364 P.3d 830 (2015) (quoting *State v. Kinzle*, 181 Wn. App. 774, 785, 326 P.3d 870 (2014)). A causal relationship is not required. *State v. Letourneau*, 100 Wn. App. 424, 431-32, 997 P.2d 436 (2000). We review crime-related prohibitions for abuse of discretion. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010).

Mr. Sickels may challenge the crime-relatedness of the conditions for the first time in a timely personal restraint petition. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 812, 792 P.2d 506 (1990). To receive collateral review on this nonconstitutional ground, however, he must establish that the claimed error constitutes a fundamental defect that inherently results in a complete miscarriage of justice. *Id.* And to obtain relief, he must present at least a prima facie showing of the facts underlying the claim of unlawful restraint and the evidence available to support the factual allegations. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013). Bald assertions and conclusory allegations are not enough. *Id.*

Mr. Sickels challenges conditions 5 and 9 as not being crime-related. They

provide that Mr. Sickels shall:

> 5.　Inform the supervising CCO[3] and sexual deviancy treatment
> provider of any dating relationship. Disclose sex offender status
> prior to any sexual contact. Sexual contact in a relationship is
> prohibited until the treatment provider approves of such.
>
> . . . .
>
> 9.　Do not possess, use, access or view any sexually explicit material as
> defined by RCW 9.68.130 or erotic materials as defined by RCW
> 9.68.050 or any material depicting any person engaged in sexually
> explicit conduct as defined by RCW 9.68A.011(4) unless given prior
> approval by your sexual deviancy provider.

PRP, Ex. 1, at 1.

The first two sentences of condition 5 do not prohibit conduct. Those commands

would not have been imposed under RCW 9.94A.703(3)(f), so "crime-relatedness" is not

the standard. They are affirmative conduct requirements governed by RCW

9.94A.703(3)(d), which provides for a related but arguably broader standard: they must

be "reasonably related to the circumstances of the offense, the offender's risk of

reoffending, or the safety of the community." The two commands are reasonably related

to the safety of the community. They protect individuals who Mr. Sickels dates or with

whom he embarks on a sexual relationship by providing them with knowledge of the

potential risk he presents to minors. They make it possible for Mr. Sickels's CCO and

---

[3] Community corrections officer.

6

treatment provider to take whatever additional steps they might deem appropriate to protect anyone embarking on a dating or sexual relationship with Mr. Sickels.

Condition 9 and the third command of condition 5 are prohibitions and must be crime-related.

Condition 5's requirement for treatment provider approval for sexual contact is a common condition for sex offenders, and it, or a substantially similar condition, has been challenged a number of times. Two published decisions addressing the condition have found it to be crime-related. *State v. Autrey*, 136 Wn. App. 460, 468, 150 P.3d 580 (2006), upheld a condition that required therapist approval for sexual contact, explaining that "the offender's freedom of choosing even adult sexual partners is reasonably related to their crimes because potential romantic partners may be responsible for the safety of live-in or visiting minors." *State v. Lee*, 12 Wn. App. 2d 378, 403, 460 P.3d 701 (2020), reasoned the condition was crime-related where Lee was convicted of raping and assaulting a person in the context of a romantic dating relationship.

In four unpublished decisions, this court has accepted a State concession that the condition was not crime-related.[4] In three unpublished decisions, this court has held that

---

[4] *State v. Gray*, No. 77860-9-I, slip op. at 8 (Wash. Ct. App. Apr. 29, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/778609.pdf; *State v. Stark*, No. 76676-7-I, slip op. at 4 (Wash. Ct. App. Oct. 15, 2018) (unpublished), https://www.courts .wa.gov/opinions/pdf//766767.pdf; *State v. Martinez*, No. 77776-9-I, slip op. at 11-12 (Wash. Ct. App. July 1, 2019) (unpublished), https://www.courts.wa.gov/opinions

the condition was not crime-related.[5]  In four unpublished decisions, this court has held

that it was crime-related.[6]

We are persuaded that the condition is crime-related in this case by *State v. Sadler*,

an unpublished Division One decision in which the panel reasoned persuasively that

when a companion condition requires the offender to obtain a sexual deviancy evaluation

and comply with treatment recommendations, a requirement for treatment provider

approval of sexual contact is crime-related.  No. 73525-0-I, slip op. at 14-15 (Wash. Ct.

App. Mar. 27, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/735250.pdf.

---

/pdf/777769.pdf; and *State v. Greer*, No. 78291-6-I, slip op. at 16 (Wash. Ct. App. Nov. 18, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/782916.pdf.

[5] *In re Pers. Restraint  of Tillman*, No. 51181-9-II, slip op. at 2 (Wash. Ct. App. June 5, 2018) (unpublished) (condition not crime related and overbroad), https:// www.courts.wa.gov/opinions/pdf/D2%2051181-9-II%20Unpublished%20Opinion.pdf; *In re Pers. Restraint of Peppin*, No. 34866-1-III (unpublished) (Wash. Ct. App. July 31, 2018), order granting in part mot. for recons. at 2 (Sept. 6, 2018), http://www.courts.wa .gov/opinions/pdf /348661_order; *State v. Mecham*, No. 79008-1-I, slip op. at 15 (Wash. Ct. App. Mar. 2, 2020) (unpublished) (court could not conclude from record that the condition was crime-related), https://www.courts.wa.gov/opinions/pdf/790081.pdf.

[6] *State v. Staples*, No. 78460-9-I, slip op. at 10 (Wash. Ct. App. Dec. 30, 2019) (unpublished) (crime-related where defendant's propensity for sex crimes was not limited to strangers), https://www.courts.wa.gov/opinions/pdf/784609.pdf; *State v. Sadler*, No. 73525-0-I, slip op. at 14-15 (Wash. Ct. App. Mar. 27, 2017) (unpublished) (crime-related where defendant would also be submitting to a sexual deviancy evaluation), https:// www.courts.wa.gov/opinions/pdf/735250.pdf; *State v. Rene-Gomez*, No. 77561-8-I, slip op. at 27 (Wash. Ct. App. Oct. 7, 2019) (unpublished), https://www.courts.wa.gov /opinions/pdf/775618.pdf; *State v. Airhart-Bryon*, No. 78805-1-I, slip op. at 25-26 (Wash. Ct. App. Apr. 13, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf /788051.pdf.

The evaluation and treatment condition "ensure[d] that Sadler [would] have a treatment provider who could give approval for sexual contact." Slip op. at 15.

Similar to *Sadler*, Mr. Sickels's judgment and sentence requires him to obtain a sexual deviancy evaluation within 30 days of his release from confinement and to follow any recommended treatment. PRP, Ex. 1, at 1 (Special Condition 4). Reasonably read, condition 5 does not require Mr. Sickels to get contact-by-contact approval for sexual contact for life. Reasonably read, it requires that he not have sexual contact "until" his treatment provider is satisfied that sexual contact does not put others at risk. It is not a total ban on protected activity and can be challenged as applied in the event the treatment provider's approval is exercised unreasonably. When, as here, the condition is imposed on a sex offender along with a requirement for early evaluation it is crime-related.

As for condition 9, Mr. Sickels argues that "there's no evidence that erotic or sexually explicit materials played any part in the attempted crime." PRP at 10-11; Pet'r's Reply Br. at 4. To the contrary, the presentence investigation report provides evidence of Mr. Sickels's increasing use of pornography in the month before the crime, even if Mr. Sickels did not believe it contributed to his commission of the crime.

While Mr. Sickels focuses on the fact he did not contact the fictional 13 year old after viewing sexually explicit materials, our Supreme Court takes a broader view of the crime-relatedness of prohibiting sex offenders from having access to such materials. In *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 686, 425 P.3d 847 (2018), in which a

9

defendant convicted of child rape and child molestation challenged the same community

custody condition imposed on Mr. Sickels as condition 9,[7] the Supreme Court found it to

be crime-related, explaining:

> Nguyen committed sex crimes and, in doing so, established his inability to control his sexual urges. It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing "sexually explicit materials," the only purpose of which is to invoke sexual stimulation.

> The condition is crime-related.

B.     *Vagueness challenges*

Under the Fourteenth Amendment to the United States Constitution and article I,

section 3 of the Washington State Constitution, the due process vagueness doctrine

"requires that citizens have fair warning of proscribed conduct." *State v. Bahl*, 164

Wn.2d 739, 752, 193 P.3d 678 (2008). A community custody condition must afford the

same fair warning as a law, although a community custody condition does not enjoy the

same presumption of constitutionality. *State v. Sanchez Valencia*, 169 Wn.2d 782, 793,

239 P.3d 1059 (2010) (*Sanchez Valencia* II). "A legal prohibition, such as a community

custody condition, is unconstitutionally vague if (1) it does not sufficiently define the

proscribed conduct so an ordinary person can understand the prohibition or (2) it does not

provide sufficiently ascertainable standards to protect against arbitrary enforcement."

---

[7] In Nguyen's case, it was special condition 11, reproduced at 191 Wn.2d at 676.

*State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).  Such a condition is not

unconstitutionally vague "merely because a person cannot predict with complete certainty

the exact point at which his actions would be classified as prohibited conduct."  *Sanchez*

*Valencia* II, 169 Wn.2d at 793 (internal quotation marks omitted) (quoting *State v.*

*Sanchez Valencia*, 148 Wn. App. 302, 321, 198 P.3d 1065 (2009) (*Sanchez Vallencia* I)).

Mr. Sickels contends that conditions 9 and 16 are unconstitutionally vague.

He contends that condition 9 (set forth above) is unconstitutionally vague in its use

of the terms "sexually explicit material," "erotic materials," and "material depicting any

person engaged in sexually explicit conduct."

The Supreme Court held in *Nguyen* that "sexually explicit material" is not an

unconstitutionally vague term, a conclusion it held was bolstered by the incorporation of

the definition appearing at RCW 9.68.130.  191 Wn.2d at 680.  The statutory definition

explicitly excludes "works of art or of anthropological significance," which defeats Mr.

Sickels's argument that the condition chills his First Amendment rights.  RCW

9.68.130(2).

As for the term "erotic," our Supreme Court held in *Bahl* that while undefined by

the community custody condition in that case, "erotic" is not vague.  164 Wn.2d at 758-

59.  It relied on a dictionary definition of "erotic" in finding the condition sufficiently

11

clear.[8] *Id.* at 759. The clarity of the meaning of "erotic" in condition 9 is bolstered by

the condition's incorporation of the statutory definition at RCW 9.68.050, a definition

that our Supreme Court upheld as constitutional in *Soundgarden v. Eikenberry*, 123

Wn.2d 750, 759, 771, 871 P.2d 1050 (1994) (striking down RCW 9.68.050 for due

process concerns not relevant to this appeal).

The last clause, prohibiting Mr. Sickels from possessing, using, accessing, or

viewing "any material depicting any person engaged in sexually explicit conduct as

defined by RCW 9.68A.011(4)," is problematic. The definition on which it relies appears

in the chapter of Title 9 RCW that deals with the sexual exploitation of children. The

defined term "sexually explicit conduct" identifies conduct by a minor which, if

photographed or used in a live performance, subjects certain participants to prosecution

for sexual exploitation of a minor. RCW 9.68A.040. It is a crime under the chapter for

persons to deal in, send, possess, or view depictions of such conduct by a minor. RCW

9.68A.050, .060-.075. Given the purpose of the chapter, "sexually explicit conduct" is

broad, and includes conduct such as simulated sexual intercourse that—engaged in by

adults—appears in mainstream media.

---

[8] "'of, devoted to, or tending to arouse sexual love or desire: as **a :**
treating of or depicting sexual love . . . **:** AMATORY . . . **b :** tending to
excite sexual pleasure or desire . . . **c :** directed toward sexual gratification
. . . **d :** strongly affected by sexual desire.'" *Bahl*, 164 Wn.2d at 759
(alterations in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL
DICTIONARY 772 (2002)).

In *Padilla*, our Supreme Court found a prohibition on viewing "'images of sexual intercourse, simulated or real, masturbation, or the display of intimate body parts'" vague, in part because mainstream films and television shows depict simulated sexual intercourse. 190 Wn.2d at 681 (quoting the record). *Padilla* is controlling authority that the definition incorporated from RCW 9.68A.011(4) is unconstitutionally vague. We direct the sentencing court to strike or modify it.

Mr. Sickels's final vagueness challenge to condition 9 is that it authorizes his treatment provider to make exceptions to its restrictions on the possession, use, or viewing of materials, which he argues permits arbitrary enforcement in violation of due process. He cites no legal authority for the proposition that if a blanket prohibition on conduct would be constitutional, the authority of a treatment provider to make an exception violates due process. Where no authorities are cited in support of a proposition, we are not required to search out authorities, but may assume that the party, after diligent search, has found none. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). The argument does not warrant consideration.

Mr. Sickels's second vagueness challenge is to condition 16, which provides:

> Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or CCO.

13

PRP, Ex. 1, at 2. He relies for his challenge on *State v. Wallmuller*, 4 Wn. App. 2d 698, 423 P.3d 282 (2018), but that decision was reversed by the Washington Supreme Court, which held that a similar condition was not unconstitutionally vague. *State v. Wallmuller*, 194 Wn.2d 234, 236-37, 449 P.3d 619 (2019) (*Wallmuller* II).

Mr. Sickels also argues that the authority granted to DOC or his CCO to identify proscribed locations in advance invites arbitrary enforcement, but he overlooks the fact that the condition's only command is its first sentence—"Stay out of areas where children's activities regularly occur or are occurring"—and no authority is granted to DOC or his CCO to vary that command. The condition simply places a burden on DOC or the CCO to affirmatively identify locations they deem to be prohibited by the command. This spares Mr. Sickels the burden and risk of self-identifying locations he might fear are prohibited. In this respect, it addresses a concern expressed by the dissent in *Wallmuller* II that an offender should be able to consult a list to know where he can or cannot go. *See Wallmuller* II, 194 Wn.2d at 248-50 (Wiggins, J., dissenting).

C.      *Overbreadth*

Mr. Sickels's remaining constitutional challenges are to conditions that, while not vague, are overbroad. "A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) (citing *Zwickler v. Koota*, 389 U.S. 241, 249-50, 88 S. Ct. 391, 19 L. Ed. 2d 444 (1967) and cases cited). "Overbreadth

analysis measures how enactments that prohibit conduct fit with the universe of constitutionally protected conduct." *City of Tacoma v. Luvene*, 118 Wn.2d 826, 839, 827 P.2d 1374 (1992) (citing Richard Fallon, Jr., *Making Sense of Overbreadth*, 100 YALE L.J. 853 (1990-1991). Overbreadth goes to the question of whether State action is couched in terms so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well. *Blondheim v. State*, 84 Wn.2d 874, 878, 529 P.2d 1096 (1975) (citing *Grayned*, 408 U.S. at 114).

An offender can challenge a community custody condition as too broadly impinging on any constitutional right as long as the challenge is ripe. Parties sometimes get that wrong by relying on case law dealing with standing to assert the overbreadth of a statute—case law that gives special treatment to challenges based on the First Amendment. Courts generally decide the constitutionality of a statute as applied to specific people in specific situations and disfavor facial challenges; an exception to this high bar has been carved out for overbreadth challenges under the First Amendment. *June Med. Servs. LLC v. Russo*, ___ U.S. ___, 140 S. Ct. 2103, 2175, 207 L. Ed. 2d 566 (2020) (Gorsuch, J., dissenting).

This court wrongly refused to consider overbreadth challenges to community custody conditions by misapplying standing jurisprudence in *State v. Bahl*, noted at 137 Wn. App. 1021, 2007 WL 575436, at *1-2, *rev'd in part*, 164 Wn.2d 739, 190 P.2d 678 (2008), and *Sanchez Valencia* I, 148 Wn. App. at 320, *rev'd*, 169 Wn.2d 782, 239 P.3d

1059 (2010). In *Bahl*, the error was in viewing "overbreadth doctrine" as related *only* to standing to challenge a statute. In *Sanchez Valencia* I, the error was in assuming that only an "as applied" challenge, not a "facial" challenge, could be raised to a condition that was based on a constitutional right other than one guaranteed by the First Amendment.

In reversing this court's decision in *Bahl*, the Washington Supreme Court explained:

> [T]he parties' arguments respecting Bahl's ability to bring a facial vagueness claim are misplaced. In contrast to a constitutional challenge to a statute, the challenge is to sentencing conditions that apply uniquely to an individual defendant, who clearly has standing to challenge them, as terms of his or her sentence, on the basis of claimed illegality.

164 Wn.2d at 750-51. The Supreme Court did require that a pre-enforcement claim be ripe for review, which it will be "'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Id.* at 751, (quoting *First United Methodist Church v. Hr'g Exam'r*, 129 Wn.2d 238, 255-56, 916 P.2d 374 (1996)). "The court must also consider 'the hardship to the parties of withholding court consideration.'" *Id.* (quoting *First United*, 129 Wn.2d at 255).

In reversing this court's decision in *Sanchez Valencia*, the Supreme Court stated that in determining whether an offender is asserting a ripe constitutional challenge to a community custody condition, "[t]he fact that no party [argues] a First Amendment violation . . . is . . . of no relevance." *Sanchez Valencia* II, 169 Wn.2d at 788.

16

Of course, the mere fact that a custody condition impinges upon a constitutional right does not invalidate it, because "[a]n offender's usual constitutional rights during community placement are subject to SRA-authorized[9] infringements." *State v. Hearn*, 131 Wn. App. 601, 607, 128 P.3d 139 (2006) (citing *State v. Riles*, 135 Wn.2d 326, 347, 957 P.2d 655 (1998)). At issue in a ripe constitutional challenge to a custody condition is the point at which an SRA-authorized infringement is constitutionally overbroad.

Our Supreme Court has repeatedly looked to the Ninth Circuit Court of Appeals' en banc decision in *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975) for guidance on that score. *Consuelo-Gonzalez* "set out a general test for evaluating probation conditions imposed pursuant to the Federal Probation Act which may impinge upon constitutional freedoms," holding that the conditions must be "reasonably related" to the purposes of the Act. *United States v. Pierce*, 561 F.2d 735, 739 (9th Cir. 1977) (citing Act of Mar. 4, 1925, ch. 521, 43 Stat. 1259). To determine whether a reasonable relationship exists, it considered and balanced "(1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement." *Id.* (citing *Consuelo-Gonzalez*, 521 F.2d at 262).

The Washington Supreme Court cited *Consuelo-Gonzalez* in holding, in *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993), that "[l]imitations upon fundamental

---

[9] Sentencing Reform Act of 1981, chapter 9.94A RCW.

17

rights are permissible, provided they are imposed sensitively." *See*, *accord State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008); *State v. K.H.-H.*, 185 Wn.2d 745, 751-52, 374 P.3d 1141 (2016). *And see Riley*, 121 Wn.2d at 37-38 (quoting *Malone v. United States*, 502 F.2d 554, 556 (9th Cir.1974) as holding that "[the convict's] 'freedom of association may be restricted if reasonably necessary to accomplish the essential needs of the state and public order'" (alteration in original)).

*Consuelo-Gonzalez* found that the purposes to be served by probation under the federal Probation Act were the rehabilitation of the convicted person and the protection of the public. 521 F.2d at 264. It held that "[c]onditions that unquestionably restrict otherwise inviolable constitutional rights may properly be subject to special scrutiny to determine whether the limitation does in fact serve the dual objectives of rehabilitation and public safety." *Id.* at 265. It emphasized that "this is not to say that there is any presumption, however weak, that such limitations are impermissible."

> Rather, it is necessary to recognize that when fundamental rights are curbed it must be done sensitively and with a keen appreciation that the infringement must serve the broad purposes of the Probation Act.

*Id.*

The reasonableness of some custody conditions that curb fundamental rights can be analyzed somewhat categorically, avoiding the need for a defendant-specific analysis in every case. *See, e.g.*, *Consuelo-Gonzalez*, 521 F.2d at 263 (identifying how broadly probation searches can be authorized in light of the Fourth Amendment); *K.H.-H.*, 185

Wn.2d at 754-56 (requiring an unrepentant juvenile defendant to write a letter of apology is consistent with the Juvenile Justice Act of 1977).  Others, such as no-contact orders that extend to persons other than victims, require an analysis that is "delicate and fact-specific."  *Rainey*, 168 Wn.2d at 377 (condition prohibiting contact with family members).

RCW 9.94A.010 describes the purposes of the SRA.  Most relevant to community custody are the purposes of protecting the public, offering the offender an opportunity to improve himself or herself, making frugal use of government resources, and reducing the risk of reoffending.  RCW 9.94A.010(4)-(7).

Mr. Sickels challenges conditions 21 and 22 as overbroad.  They provide:

21. No internet access or use, including email, without the prior approval of the supervising CCO.

22. No use of a computer, phone, or computer-related device with access to the Internet or on-line computer service except as necessary for employment purposes (including job searches).  The CCO is permitted to make random searches of any computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition.

PRP, Ex. 1, at 2.  He argues they are not sensitively imposed or reasonably necessary to accomplish the essential needs of the State and public order.

The State concedes overbreadth, and suggests substituting a single condition that states, "No internet use of websites including email, to contact minors, to gather information about minors, or access personal webpages of minors."  Resp. to PRP at 13.

19

Mr. Sickels argues that the State's suggested language is vague and "appears to be a clever attempt to circumvent the Constitution and a United States Supreme Court ruling in *Packingham v. North Carolina*," __ U.S. __, 137 S. Ct. 1730, 1735, 198 L. Ed. 2d 273 (2017).  Pet'r's Reply Br. at 13.

In *Packingham*, the Supreme Court struck down a North Carolina law that made it a felony for any registered sex offender "to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages."  137 S. Ct. at 1731.  The Court observed that today, the Internet, and "social media in particular," are "the most important places . . . for the exchange of views."  *Id.* at 1735.  It concluded that the statute was overbroad because "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights.  It is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences.  Even convicted criminals—and in some instances especially convicted criminals—might receive legitimate benefits from these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives."  *Id.* at 1737.

Mr. Sickels overstates the significance of *Packingham* to our review of conditions 21 and 22.  To begin with, the United States Supreme Court observed in *Packingham* that "it can be assumed that the First Amendment permits a State to enact specific, narrowly

20

tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." *Id.*

More importantly, *Packingham* involved the distinguishable context of a criminal statute applicable to registered sex offenders who had completed their sentences. The Supreme Court in that case was not dealing with a challenge to probation conditions. One of the key concerns of the majority was that North Carolina's law applied to "persons who have completed their sentences" rather than persons on probation. *Id.* When it comes to the constitutionality of probation conditions, the United States Supreme Court has been noticeably absent from the discussion for decades.[10] For that reason, reliance on *Packingham* is misplaced in the community custody context. Notably, federal circuit courts have rejected arguments that a prohibition on access to the internet in a supervisory release condition is plain error after *Packingham*. *E.g.*, *United States v. Carson*, 924 F.3d 467, 473 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 405, 205 L. Ed. 2d

---

[10] If presented with a probation condition case, the Supreme Court would likely begin with standards applied in *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974) ("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.") and *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) (rejecting prisoners' argument that prison regulations infringing on first amendment rights should be subject to strict scrutiny, asking instead whether the regulation that burdened the prisoners' fundamental rights was "reasonably related" to "legitimate penological interests").

239 (2019); *United States v. Halverson*, 897 F.3d 645, 657-58 (5th Cir. 2018); *United States v. Browder*, 866 F.3d 504, 511 n.26 (2d Cir. 2017); *United States v. Rock*, 863 F.3d 827, 831 (D.C. Cir. 2017). A Third Circuit decision observed that "internet bans and restrictions have a role in protecting the public from sexual predators," although on the record, the Third Circuit panel saw no justification for stopping the offender from accessing websites where he will probably never encounter a child. *United States v. Holena*, 906 F.3d 288, 292-93 (3d Cir. 2018). It suggested it would be enough for the court to give the probation office some categories of websites that could not be visited, or a guiding principle. *Id.*

Even a Second Circuit opinion that viewed *Packingham* as establishing that citizens have a First Amendment right to access the internet observed that a restriction under which the offender's internet use was monitored by the federal probation office "remained to all outward appearances a viable option." *United States v. Eaglin*, 913 F.3d 88, 98 (2d Cir. 2019).

Balancing the SRA's purposes against what would otherwise be Sickels's inviolate right to computer and internet access and use, we hold that condition 22's limitation of internet use to employment purposes is overly broad and condition 21's provision for "[n]o internet access or use, including email" is even more objectionable. Delegating authority to Mr. Sickels's supervising CCO to approve internet access does not solve the problem; a sentencing court may not wholesaledly abdicate its judicial responsibility for

setting the conditions of release. *State v. Sansone*, 127 Wn. App. 630, 642, 111 P.3d 1251 (2005) (citing *Loy*, 237 F.3d at 266). Condition 22's provision for random searches to monitor compliance is reasonable as long as the restrictions on internet and computer use are revised.

The State's suggested language would work; it is not vague or overbroad. An even more restrictive condition could also pass constitutional muster.[11] We will direct the superior court to strike conditions 21 and 22 and consider whether to impose a more narrowly-tailored condition.

We transfer the PRP to the trial court with directions to provide the following relief:

- Strike "or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4)" from condition 9 of Appendix H and consider whether to substitute language that is not unconstitutionally vague;
- Strike "breathanalysis" from condition 10;
- Add "with the exception of Defendant's biological children" to condition 14; and
- Strike conditions 21 and 22 and consider whether to impose the State's proposed condition or some other condition or conditions that more narrowly restrict computer and internet access and use.

---

[11] Division Two has upheld a condition prohibiting a defendant convicted of child molestation and communication with a minor for immoral purposes from "joining or perusing any public social websites, i.e., Facebook, MySpace, Craigslist, Backpage, etc." *State v. Stock*, No. 52179-2-II, slip op. at 3 (Wash. Ct. App. Dec. 24, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2052179-2-II%20Unpublished %20Opinion.pdf. Like Mr. Sickels, the defendant had used Craigslist to engage in sexually explicit conversations with a person he believed was 13 years old, so the prohibition was reasonably necessary to protect children. *Stock*, slip op. at 3.

The PRP is otherwise dismissed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with RCW 2.06.040, the rules governing unpublished opinions.

II.     MR. SICKELS WAS NOT ENTITLED TO NOTICE OF THE PARTICULAR RESTRICTIONS THAT WOULD BE IMPOSED DURING COMMUNITY CUSTODY BEFORE ENTERING HIS GUILTY PLEA

Mr. Sickels's PRP asks that all of the nonmandatory community custody conditions imposed by his judgment and sentence "be stricken[,] as they were added after the guilty plea had been entered and accepted by the court." PRP at 32. He asks that we "remand back to the sentencing court for specific performance of the signed plea agreement." *Id.* (citing *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 199, 814 P.2d 635 (1991)).

Mr. Sickels did not move to withdraw his plea in the trial court under CrR 4.2(f) as necessary to correct a manifest injustice. The State responds as if he did, however, and as if this is a direct appeal of the denial of such a motion. It treats the only question presented as being whether Mr. Sickel's plea was invalid for lack of notice. Resp. to PRP at 9-10.

"Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent," and "[a] guilty plea is not knowingly made when it is based on misinformation of sentencing consequences." *In re Pers. Restraint of Isadore*, 151

24

Wn.2d 294, 297-98, 88 P.3d 390 (2004) (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)).

While a defendant must be informed of all "direct consequences" of his plea, he "need not be informed of all possible consequences." *Isadore*, 151 Wn.2d at 298. A direct consequence of sentencing is "'a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" *In re Pers. Restraint of Ness*, 70 Wn. App. 817, 822, 855 P.2d 1191 (1993) (quoting *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)).

That a defendant will be subject to a mandatory period of community placement following his prison sentence is a direct consequence of a guilty plea, and failure to so inform a defendant renders that plea invalid. *State v. Ross*, 129 Wn.2d 279, 280, 916 P.2d 405 (1996). In *In re Pers. Restraint of Waggy*, this court held that the same was not true of a failure to inform a defendant of the specific restrictions to be imposed, concluding that "*Ross* impliedly held that a guilty plea is valid if the defendant is informed that he will be required to serve a term of community placement but is not informed of the specific restrictions to be associated with that placement." 111 Wn. App. 511, 517, 45 P.3d 1103 (2002). The fact that imposing such restrictions is discretionary means they are not "definite" or "largely automatic" and thus are not direct consequences of the guilty plea. *Ness*, 70 Wn. App. at 822;

Mr. Sickels's statement on plea of guilty states,

> In addition to the period of confinement, I will be sentenced to community custody for any period of time I am released from total confinement before the expiration of the maximum sentence. During the period of community custody I will be under the supervision of the Department of Corrections and I will have restrictions and requirements placed upon me, which may include electronic monitoring, and I may be required to participate in rehabilitative programs.

PRP, Ex. 3, at 4. This clause conveys materially equivalent information to that found in the plea agreement in *Waggy*, which was, in turn, "similar in all pertinent respects" to guilty plea language quoted with approval in *Ross*. 111 Wn. App. at 516. Mr. Sickels was not entitled to any more detailed notice before entering his guilty plea.

III.     THE SENTENCING COURT DID NOT ERR IN REFUSING TO CONSIDER A SSOSA

Mr. Sickels raises two challenges to the sentencing court's refusal to consider imposing a SSOSA. He argues (a) that the sentencing court erred in concluding he was not eligible and (b) if he was ineligible, it was based on a requirement that violates his right to equal protection.

A.     Mr. Sickels was ineligible because he did not have an established relationship or connection with the victim

Statutory eligibility requirements for a SSOSA exclude certain repeat and violent sex offenders and require, if the conviction resulted from a guilty plea, that the offender voluntarily and affirmatively admit committing all of the elements of his or her crime. RCW 9.94A.670(2). In addition, RCW 9.94A.670(2)(e) requires, to be eligible, that the offender "had an established relationship with, or connection to, the victim such that the

sole connection with the victim was not the commission of the crime." "'Victim' means any person who has sustained emotional, psychological, physical, or financial injury to person or property as a result of the crime charged. 'Victim' also means a parent or guardian of a victim who is a minor child unless the parent or guardian is the perpetrator of the offense." RCW 9.94A.670(1)(c).

The seemingly anomalous requirement that the offender have an established relationship or connection to the victim is explained by the history and purpose of the sentencing alternative, which seeks to encourage otherwise reluctant victims to come forward. In adding the requirement that the offender have an established relationship with the victim in 2004, the legislature's goal was to balance the need to punish those who harm children and the reality that victims, who are often related to the offender, might not come forward if the penalty is too harsh. *State v. Pratt*, 11 Wn. App. 2d 450, 460-61, 454 P.3d 875 (2019) (citing H.B. REP. on ENGROSSED SUBSTITUTE H.B. 2400, 58th Leg., Reg. Sess. (Wash. 2004)), *review granted*, 195 Wn.2d 1023, 464 P.3d 231 (2020). In sentencing Mr. Sickels, the sentencing court observed that this eligibility requirement makes all who commit crimes against fictional victims in "sting" operations ineligible for a SSOSA.

Mr. Sickels points out that the prosecutor observed at sentencing that the State is the "victim" of an offender charged with an attempted crime against a child in a sting operation. He argues that he, "as a lifetime resident of the State does have an 'established

27

relationship' . . . or 'connection to' the State 'other than the commission of the crime.'"

PRP at 26-27. Since he satisfied the requirement, he argues it was an abuse of discretion

for the sentencing court to refuse to consider imposing a SSOSA.

"Where a defendant has requested a sentencing alternative authorized by statute, a

trial court's failure to consider that alternative is effectively a failure to exercise

discretion and is subject to reversal." *State v. Landsiedel*, 165 Wn. App. 886, 889, 269

P.3d 347 (2012), *aff'd sub nom. Landsiedel v. Ransome*, 765 Fed. App'x 148 (9th Cir.

2019). However, whether an offender meets the statutory requirements for SSOSA

eligibility is a question of statutory interpretation, which we review de novo. *Id.*

In a statutory interpretation analysis, the court's fundamental objective is to

ascertain and carry out the legislature's intent, and if a statute's meaning is plain on its

face, we give effect to that plain meaning as an expression of legislative intent. *Dep't of*

*Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

When the identity of a crime victim is relevant, the law sometimes treats the

public at large as the victim. An example is determining whether multiple crimes

constitute the "same criminal conduct" under RCW 9.94A.589(1)(a), where one or more

of the crimes is an undercover operation carried out by law enforcement. *E.g.*, *State v.*

*Garza-Villarreal*, 123 Wn.2d 42, 47, 864 P.2d 1378 (1993) (citing *State v. Rodriguez*, 61

Wn. App. 812, 816, 812 P.2d 868 (1991)). Here, however, the statute provides us with a

definition of "victim," and it plainly requires a victim who is a "person." RCW

28

9.94A.670(1)(c).  Moreover, it requires a "person who has sustained emotional, psychological, physical, or financial injury to person or property."  *Id.*

While the State could be the victim of Mr. Sickels's crime for other purposes, it could not be a "victim" for purposes of the eligibility requirement imposed by RCW 9.94A.670(1)(e).  The sentencing court correctly concluded that Mr. Sickels was ineligible for a SSOSA.

> B.    The "established relationship or connection" requirement does not violate Mr. Sickels right to equal protection

Mr. Sickels challenges the "established relationship or connection" requirement as violating his constitutional right to equal protection.  "Under the equal protection clause of the Washington State Constitution, article I, section 12, and the Fourteenth Amendment to the United States Constitution, persons similarly situated with respect to the legitimate purpose of the law must receive like treatment."  *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992).  Where the law treats different classes of persons differently, the level or scrutiny applied depends on the nature of the classification or rights involved.  *State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010).  "Absent a fundamental right or suspect class, or an important right or semisuspect class, a law will receive rational basis review."  *Id.*

Mr. Sickels falls within the class of persons convicted of sex offenses who do not have an established relationship or connection with their victim.  This is not a suspect or

29

quasi-suspect class and no fundamental right is implicated, so the appropriate standard of review is rational basis. *Id*.

"Under the rational basis test, state action does not violate the equal protection clause if there is a rational relationship between the classification and a legitimate state interest." *State v. Osman*, 157 Wn.2d 474, 486, 139 P.3d 334 (2006).

We have already addressed the history of the sentencing alternative and why the established relationship eligibility requirement was added. In the context of sex offenses, victim cooperation is essential to prosecuting offenders and preventing them from victimizing other people. While an offender who does not know his or her victim may not be any less deserving of leniency, the legislature has a rational basis for affording leniency in cases where it will encourage reporting and denying leniency in cases where it will not.

We transfer the PRP to the trial court with directions to provide the following relief:

- Strike "or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4)" from condition 9 of Appendix H and consider whether to substitute language that is not unconstitutionally vague;
- Strike "breathanalysis" from condition 10;
- Add "with the exception of Defendant's biological children" to condition 14; and
- Strike conditions 21 and 22 and consider whether to impose the State's proposed condition or some other condition or conditions that more narrowly restrict computer and internet access and use.

No. 36753-3-III
*State v. Sickels*

The PRP is otherwise dismissed.[12]

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, C.J.

---

[12] Mr. Sickels asks that we deny an award of costs to the State if it is deemed to be the substantially prevailing party. Under a general order of this division, waiver of an award of appellate costs is decided by the clerk or the commissioner in accordance with RAP Title 14." Gen. Order of Division III, *In re the Matter of Court Admin. Order re: Appellate Costs* (Wash. Ct. App. Feb. 19, 2019).