The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 8, 2021

## 2021COA92

**No. 17CA1449, *People v. Landis* — Criminal Law — Sentencing — Sex Offender Intensive Supervision Probation; Constitutional Law — First Amendment — Freedom of Speech**

A division of the court of appeals holds that the conditions of defendant Christopher David Landis's sentence to sex offender intensive supervision probation (SOISP) restricting his use of the internet and social media did not violate the Colorado statutory scheme or his constitutional rights to free speech under the United States and Colorado Constitutions. In doing so, the division holds, as a matter of first impression in Colorado, that the United States Supreme Court's decision in *Packingham v. North Carolina*, 582 U.S. ___, 137 S. Ct. 1730 (2017), does not apply to conditions restricting internet and social media use of a sentence to SOISP that a defendant is still serving.

COLORADO COURT OF APPEALS                                    **2021COA92**

---

Court of Appeals No. 17CA1449
Mesa County District Court No. 17CR296
Honorable Valerie J. Robison, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christopher David Landis,

Defendant-Appellant.

---

SENTENCE AFFIRMED

Division IV
Opinion by JUDGE DAVIDSON*
Furman and Pawar, JJ., concur

Announced July 8, 2021

---

Philip J. Weiser, Attorney General, Gabriel P. Olivares, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jeanne Segil, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1    Defendant, Christopher David Landis, appeals his probationary sentence for attempted sexual assault on a child. He contends that the conditions of his probation restricting his use of the internet and social media violate (1) the governing Colorado statutory scheme and (2) his rights to free speech under the United States and Colorado Constitutions. While we fully acknowledge that, to date, the internet has become one of the most important places, if not the most important place, for people to exchange views and ideas, under the circumstances here, we disagree with both of Landis's contentions. Accordingly, we affirm.

## I.    Background

¶ 2    According to the affidavit of probable cause for arrest, Landis sexually assaulted his stepdaughter when she was ten years old. The evidence included his admission to police that he touched the victim's vagina and breasts.

¶ 3    The prosecution charged Landis with sexual assault on a child and sexual assault on a child by one in a position of trust. He pleaded guilty to an added count of attempted sexual assault on a child, and the original charges were dismissed. The parties stipulated to a sentence to probation.

¶ 4 At the sentencing hearing, the prosecutor agreed with the recommendation in the presentence investigation report that the district court sentence Landis to sex offender intensive supervision probation (SOISP) and require him to comply with (1) the standard "Additional Conditions of Probation for Adult Sex Offenders" (the standard conditions) and (2) the recommendations in the sex offense specific evaluation (SOSE).

¶ 5 However, Landis argued, among other things, that he should not be required to comply with the two standard conditions prohibiting use of the internet and social media without prior approval from his probation officer. He emphasized that he is required to use the internet in his ongoing employment at an electronics installation company. He also argued that the conditions violate his constitutional rights based on *Packingham v. North Carolina*, 582 U.S. \_\_\_, 137 S. Ct. 1730 (2017) (invalidating statute creating new felony offense for violation of post-custodial restrictions on sex offender access to social media).

¶ 6 The district court sentenced Landis to seven years of SOISP. As for the two standard conditions restricting use of the internet and social media, the court required Landis to comply with those

conditions but modified them to allow for such use required by his employment at the electronics installation company.  Specifically, the modified conditions at issue read (with the modifications in bold typeface) as follows:

> 22.  You shall not be allowed to subscribe to any internet service provider, by modem, LAN, DSL, or any other avenue (to include, but not limited to, satellite dishes, PDAs, electronic games, web televisions, internet appliances and cellular/digital telephones) and shall not be allowed to use another person's internet or use the internet through any venue until approved by the supervision team**, with the exception of use through employment for [the electronics installation company]**.  When access has been approved **(including access through [the electronics installation company])**, you agree to sign, and comply with, the conditions of the "Computer Use Agreement" – JDF321P.  Additionally, you will allow your probation officer, or other person trained, to conduct searches of computers or other electronic devices used by you.  **This includes the computer usage during employment with [the electronics installation company].**  The person conducting the search may include a non-judicial employee and you may be required to pay for such a search.
>
> . . . .
>
> 28.  You shall not utilize, by any means, any social networking forums offering an interactive, user-submitted network of friends,

personal profiles, blogs, chat rooms or other environment which allows for real-time interaction with others, except under circumstances approved in advance and in writing by the probation officer in consultation with the community supervision team. **The only exception authorized by the Court at the time of sentencing was through employment with [the electronics installation company]. This exception does not preclude additional exceptions that may be authorized by the probation officer in consultation with the community supervision team.**

## II.     Landis's Statutory Claim

¶ 7      Landis contends that the district court abused its discretion by imposing the probation conditions at issue because they are not reasonably related to his rehabilitation and the purposes of probation under section 18-1.3-204(2)(a)(XV), C.R.S. 2020.  We disagree.

### A.     Applicable Law and Standard of Review

¶ 8      Probation is "a privilege, not a right." *People v. Smith,* 2014 CO 10, ¶ 8.  It is an alternative to prison and is intended to be rehabilitative.  *See* § 18-1.3-104(1)(a), (b), C.R.S. 2020; *Smith,* ¶ 8. If an offender seeks a probationary sentence as an alternative to

prison, he or she must accept the district court's conditions for probation. *Smith*, ¶ 8.

¶ 9    Section 18-1.3-204(2) lists the various conditions of probation that a district court may impose, which includes a catchall for "any other conditions reasonably related to the defendant's rehabilitation and the purposes of probation." § 18-1.3-204(2)(a)(XV).

¶ 10    The parties agree that the following five factors are relevant in determining whether the probation conditions at issue are reasonably related to Landis's rehabilitation and the purposes of probation: (1) whether the conditions are reasonably related to the underlying offense; (2) whether the conditions are punitive to the point of being unrelated to rehabilitation; (3) whether the conditions are unduly severe and restrictive; (4) whether the defendant may petition the court to lift the conditions temporarily when necessary; and (5) whether less restrictive means are available. *See People v. Brockelman*, 933 P.2d 1315, 1319 (Colo. 1997).

¶ 11    "[A district] court has broad discretion to impose whatever [probation] conditions it considers appropriate" in any given case. *Smith*, ¶ 9; *see also* § 18-1.3-202(1)(a), C.R.S. 2020 (A district court may grant a defendant probation "upon such terms and conditions

5

as it deems best."); § 18-1.3-204(1)(a) ("The conditions of probation shall be such as the court in its discretion deems reasonably necessary.").

¶ 12    We review the district court's decision for an abuse of discretion. *See Brockelman*, 933 P.2d at 1319 ("[T]he applicable standard of review . . . requires an abuse of discretion by the trial court to occasion any modification of the trial court's [conditions of probation]."); *cf. People v. Cooley*, 2020 COA 101, ¶ 26 ("We consider de novo whether a probation condition is constitutional *or statutorily authorized*.") (emphasis added).

## B.    *Brockelman* Factors

¶ 13    We conclude from our evaluation of the five *Brockelman* factors that the probation conditions at issue restricting Landis's use of the internet and social media are reasonably related to his rehabilitation and the purposes of probation.

¶ 14    First, the conditions are reasonably related to Landis's underlying offense. To be sure, Landis did not use the internet in attempting to sexually assault his stepdaughter. However, he engaged in sexual conduct with a child, and it was reasonable to place restrictions on Landis's use of a medium that easily can be

6

used to facilitate contact with children. *See United States v. Edwards*, 813 F.3d 953, 969 n.11 (10th Cir. 2015) ("Computers and internet connections have been characterized elsewhere as tools of the trade for those who sexually prey on children." (quoting *United States v. Colbert*, 605 F.3d 573, 578 (8th Cir. 2010))); *United States v. Robertson*, 350 F.3d 1109, 1113 (10th Cir. 2003) ("[C]yberspace provides an increasingly common and effective medium by which would-be sexual predators can contact minors."); *see also People v. Crabtree*, 37 N.E.3d 922, 927 (Ill. App. Ct. 2015) ("[A]lthough [the] defendant's crime did not include use of a computer or a social networking website, it involved the sexual abuse of a young girl. Thus, the conditions of probation [restricting his use of a computer] appear reasonably related to the goals of deterrence, protection of the public, and rehabilitation of [the] defendant."); *McVey v. State*, 863 N.E.2d 434, 450 (Ind. Ct. App. 2007) (where the defendant was convicted of child molesting, the court held that a probation condition restricting his internet access was reasonable — despite the fact that his offense did not involve the use of a computer — because "accessing prohibited material is easily accomplished with a computer, and for that reason computer access would provide a

7

temptation of such a magnitude that exposure to it would not be in the best interest of [the defendant's] rehabilitation. This is so because the internet defies boundaries and offers unlimited access to people, including children.") (citation omitted).

¶ 15     Notably, according to the SOSE, objective testing indicated that Landis's highest sexual interest is toward juvenile females. It also concluded that he was in high denial regarding his offense. The SOSE recommended that he be "monitored carefully while in the community" and "not have contact with [the victim] or with anyone younger than 18." *See People v. Devorss*, 277 P.3d 829, 837 (Colo. App. 2011) ("By prohibiting unapproved contact with an underage child, a sex offender learns to avoid situations that may lead to inappropriate and unlawful conduct.").

¶ 16     Regarding the second and third *Brockelman* factors, the conditions at issue are not punitive to the point of being unrelated to rehabilitation and are not unduly severe and restrictive. Significantly, this was not a standard sentence to probation. Landis is sentenced to *sex offender intensive supervision* probation. Defendants serving an SOISP sentence are subject to "severely restricted activities" and "receive the highest level of supervision

8

that is provided to probationers." § 18-1.3-1007(2), C.R.S. 2020;

*see also McKune v. Lile*, 536 U.S. 24, 32-33 (2002) ("Sex offenders

are a serious threat in this Nation. . . . When convicted sex

offenders reenter society, they are much more likely than any other

type of offender to be rearrested for a new rape or sexual

assault. . . . States thus have a vital interest in rehabilitating

convicted sex offenders."); *see generally People v. Manaois*, 2021 CO

49, ¶¶ 35-40 (discussing the special nature of sex offender

sentencing, including SOISP's rigorous treatment and supervision

requirements).

¶ 17     The General Assembly has given the Sex Offender

Management Board (SOMB) authority to "develop, implement, and

revise, as appropriate, guidelines and standards to treat adult sex

offenders." § 16-11.7-103(4)(b), C.R.S. 2020. The probation

conditions at issue were based on the then-applicable standard

"Additional Conditions of Probation for Adult Sex Offenders," which

the SOMB determined were appropriate for sex offenders sentenced

to SOISP at that time.

¶ 18     Further, the conditions are not unduly severe and restrictive

because the district court specifically authorized Landis to use the

internet and social media as required by his employment at the electronics installation company.

¶ 19    As to the fourth *Brockelman* factor, Landis retains the right to ask the district court to modify the conditions in the future. *See* § 18-1.3-204(4)(a). Even more significantly, the probation conditions at issue specifically envision that Landis's probation officer and the rest of his supervision team will tailor the conditions to Landis's circumstances. For example, condition number 22 provides that Landis will not be allowed to use the internet "*until* approved by the supervision team," and that Landis is required to comply with the Computer Use Agreement "*[w]hen* access has been approved." *See United States v. Koch*, 625 F.3d 470, 482 (8th Cir. 2010) (upholding a supervised release condition restricting the defendant's computer and internet use "because the restriction is not a complete ban. [The defendant] is permitted to use a computer and the internet with prior approval from a probation officer."); *cf. People v. Lientz*, 2012 COA 118, ¶ 26 (distinguishing cases that included an outright ban on intimate relationships that did not allow for modification by the defendant's probation officer or

treatment provider).  As the Fifth Circuit explained in *United States v. Miller,*

> [t]he district court's restrictions . . . permit flexibility by allowing the probation officer to consider all the circumstances, including [the defendant's] needs for computer and Internet access and alternatives that may exist in the future for supervising that access. . . .  [We] "assume the Probation Office will reasonably exercise its discretion by permitting [the defendant] to use the Internet when, and to the extent, the prohibition no longer serves the purposes of his supervised release."

665 F.3d 114, 133-34 (5th Cir. 2011) (quoting *United States v. Love,* 593 F.3d 1, 12 (D.C. Cir. 2010)); *see also United States v. Morais,* 670 F.3d 889, 897 (8th Cir. 2012) ("Given the importance of the Internet as a resource, we expect that the probation office will not arbitrarily refuse such approval when it is reasonably requested and when appropriate safeguards are available.").

¶ 20    Furthermore, for many of the reasons we have already discussed, we conclude that less restrictive means would not be reasonable.  This is a sentence to SOISP, the conditions already allow internet and social media use required by Landis's employment, and the conditions allow him to seek modification of the conditions through his probation officer or the district court.

11

Further, Landis will obviously retain other means for communication, including communication in person and over the telephone.

### III.    Landis's Federal Constitutional Claim

¶ 21    Landis also contends that the two probation conditions at issue infringe on his right to free speech under the United States Constitution.  *See* U.S. Const. amends. I, XIV.

¶ 22    We review the constitutionality of a probation condition de novo.  *See Cooley*, ¶ 26.

### A.    Constitutionality of Internet Restrictions: *Packingham*

¶ 23    At sentencing, and continuing in this appeal, Landis bases his claim that his probationary conditions are unconstitutional on the United States Supreme Court's decision in *Packingham v. North Carolina*, 582 U.S. ___, 137 S. Ct. 1730 (2017).  *Packingham* involved a North Carolina statute making it a felony for a registered sex offender to access commercial social networking websites like Facebook and Twitter.  *See id.* at ___, 137 S. Ct. at 1733-34.  The Supreme Court held that the statute was unconstitutional.  *See id.* at ___, 137 S. Ct. at 1735-38.

¶ 24    However, the Supreme Court specifically pointed out that "[o]f importance" to the Court was "the troubling fact that the [North Carolina] law imposes severe restrictions on persons who already have served their sentence and *are no longer subject to the supervision of the criminal justice system.*"  *Id.* at ___, 137 S. Ct. at 1737 (emphasis added).  The Court repeated the same point soon after, concluding that "[i]t is unsettling to suggest that only a limited set of websites can be used *even by persons who have completed their sentences.*"  *Id.* (emphasis added); *see also United States v. Halverson,* 897 F.3d 645, 658 (5th Cir. 2018) (concluding that "the driving concern" of the Court in *Packingham* was that the North Carolina statute applied to people who were no longer serving their sentences).

¶ 25    We conclude that *Packingham* is distinguishable on that basis. Unlike the defendant in *Packingham,* Landis is quite obviously still serving his probationary sentence for a sex-related offense.  *See Manaois,* ¶ 46 (pointing out that a sentence to SOISP applies to an offender who commits a sex offense or a sex-related offense) (citing § 18-1.3-1007(1)(a)).  As the United States Supreme Court held in *United States v. Knights,* "[i]nherent in the very nature of probation

13

is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled."'"  534 U.S. 112, 119 (2001) (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 874 (1987)).  "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens."  *Id.*; *see also Gall v. United States,* 552 U.S. 38, 48 (2007) ("Offenders on probation are . . . subject to several standard conditions that *substantially restrict their liberty.*") (emphasis added).

¶ 26    We agree with other courts that have distinguished *Packingham* on that same basis for other types of sex-related offenses.  *See United States v. Carson,* 924 F.3d 467, 472-73 (8th Cir. 2019); *Halverson,* 897 F.3d at 657-58; *United States v. Rock,* 863 F.3d 827, 831 (D.C. Cir. 2017); *State v. King,* 950 N.W.2d 891, 900-02 (Wis. Ct. App. 2020); *Alford v. State,* 279 So. 3d 752, 754-56 (Fla. Dist. Ct. App. 2019).  *But see United States v. Eaglin,* 913 F.3d 88, 95-99 (2d Cir. 2019); *United States v. Holena,* 906 F.3d 288, 294-95 (3d Cir. 2018).

14

¶ 27 And given that Landis is serving a sentence to SOISP, we are unpersuaded by his argument that the probation conditions at issue amount to an unconstitutional prior restraint. This is not a case of a free citizen being enjoined from engaging in constitutionally protected speech. *See In re Jawan S.*, 121 N.E.3d 1002, 1016-17 (Ill. App. Ct. 2018) (explaining why the principle of an unconstitutional prior restraint does not apply to conditions of probation).

¶ 28 In *United States v. Ritter*, the Sixth Circuit concluded that "[s]upervisory conditions that implicate fundamental rights such as freedom of speech and freedom of association are subject to careful review, but if primarily designed to meet the ends of rehabilitation and protection of the public, they are generally upheld." 118 F.3d 502, 504 (6th Cir. 1997). Here, we have already concluded that the two probation conditions at issue meet the goals of Landis's rehabilitation and the purposes of SOISP.

### B. Constitutionality of Internet Restrictions: Probationary Sex Offenders

¶ 29 We have concluded that the rule in *Packingham* that a state statute imposing a lifetime restriction of internet access to all

registered sex offenders is unconstitutional is inapplicable to an analysis of the constitutionality of internet restrictions of sex offenders on probation or supervised release. Landis argues that, nevertheless, even under the more general intermediate scrutiny test for determining the federal constitutionality of the probation conditions at issue, the restrictions violate the First Amendment. We do not agree.

¶ 30    For a content-neutral law to survive intermediate scrutiny, the law must be "narrowly tailored to serve a significant governmental interest." *Packingham,* 582 U.S. at ___, 137 S. Ct. at 1736 (quoting *McCullen v. Coakley,* 573 U.S. 464, 486 (2014)). "[T]he essence of narrow tailoring" is that a restriction "focuses on the source of the evils the [government] seeks to eliminate . . . without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Ward v. Rock Against Racism,* 491 U.S. 781, 799 n.7 (1989). Here, the probation conditions focus on the source of evil the government aimed to eliminate — convicted offenders of sex assaults against children, who are still serving their sentences but nevertheless contact minors or view sexually stimulating materials. Further, the

probation conditions promote the substantial government interest of protecting minors from a convicted sex offender who is still serving his sentence and is still in the midst of rehabilitation. *See id.* at 799 (concluding that the requirement of narrow tailoring is satisfied if the restriction "promotes a substantial government interest that would be achieved less effectively absent the regulation." (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985))).

¶ 31  We are unpersuaded by Landis's argument that the district court should have employed less restrictive means to regulate his internet use. As the Fifth Circuit explained in *Miller*,

> we reject the argument that a district court may only resort to restrictions on Internet access like those imposed in the present case after investigating the efficacy of other options such as monitoring computer usage and Internet sites visited, unannounced inspections, and filtering devices. Internet access is widely available at locations other than one's home or place of employment. Internet access is similarly widely available from many types of devices that defendants . . . might obtain or use without detection. In addition, there are a variety of devices that are likely to be possessed by friends, family, and acquaintances that might be available to defendants . . . for Internet access without detection.

665 F.3d at 133.

¶ 32    Additionally, the probation conditions at issue still leave ample channels of communication for Landis to engage in everyday life. For example, Landis may still communicate in person, communicate over the telephone, receive news from television and newspapers, and write to his government representatives. *See Hill v. Thomas,* 973 P.2d 1246, 1257 (Colo. 1999) (absent a showing that channels of communication are inadequate for petitioners to express themselves, the law will be deemed to have left open ample alternatives and should be upheld as constitutional), *aff'd sub nom. Hill v. Colorado,* 530 U.S. 703 (2000).

¶ 33    We conclude that although the probation conditions at issue are not the least restrictive means available, they are still sufficiently narrowly tailored to serve the significant government interest of protecting minors from a convicted sex offender who is still serving his sentence and is still in the midst of rehabilitation.

IV.    Landis's State Constitutional Claim

¶ 34    Finally, Landis contends that the two probation conditions at issue infringe on his right to free speech under the Colorado

Constitution. *See* Colo. Const. art. II, § 10. In doing so, he emphasizes that the Colorado Constitution provides greater protection of free speech than the United States Constitution. *See, e.g., Bock v. Westminster Mall Co.,* 819 P.2d 55, 59 (Colo. 1991) ("For more than a century, this Court has held that Article II, Section 10 [of the Colorado Constitution] provides greater protection of free speech than does the First Amendment [to the United States Constitution].").

¶ 35    However, Landis makes only a very general argument on appeal that "[b]ecause [the probation conditions at issue] fail the intermediate scrutiny test under the First Amendment, they necessarily fail the more stringent test under article II, section 10, of the Colorado Constitution." In the district court, too, he made no specific argument regarding his state constitutional claim beyond his general assertion that the Colorado Constitution provides "broader protection" of speech than the First Amendment.

¶ 36    As divisions of this court have determined, "where neither party argues that a conceptual framework different from First Amendment analysis governs the analysis of a free speech issue under the Colorado Constitution, and federal jurisprudence has

19

established a framework for considering the issue, our analysis may proceed solely under the First Amendment." *In re Marriage of Newell,* 192 P.3d 529, 535 (Colo. App. 2008); *see also Holliday v. Reg'l Transp. Dist.,* 43 P.3d 676, 681 (Colo. App. 2001) (same). Here, we have held that the probation conditions at issue are not unconstitutional under the conceptional framework for analyzing a First Amendment claim. Accordingly, because Landis has advanced no specific suggestion on how a claim under article II, section 10 of the Colorado Constitution should be analyzed differently, we conclude that his claim under the Colorado Constitution also fails. *See also Curious Theatre Co. v. Colo. Dep't of Pub. Health & Env't,* 220 P.3d 544, 551 (Colo. 2009) ("[W]e have at times characterized the state constitution as providing greater protection for individual freedom of expression than the Federal Constitution. We have, however, rarely, if ever, construed article II, section 10 to circumscribe more narrowly than the First Amendment the regulatory powers of government.") (citations omitted).

## V.    Conclusion

¶ 37    The sentence is affirmed.

JUDGE FURMAN and JUDGE PAWAR concur.

20