The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 8, 2024

## 2024COA11

**No. 20CA0727, *People v. Torrez* — Criminal Law — Jury Instructions — Introductory Remarks, Juror Qualifications, and Jury Selection — Empanelment Oath; Appeals — Standard of Review — Plain Error**

As a matter of first impression, a division of this court of appeals concludes that when a district court does not administer an oath to the empaneled jury in a criminal matter, no party objects, and the jury renders a verdict, the error is not structural requiring automatic reversal, but instead the issue is reviewed for plain error.

Court of Appeals No. 20CA0727
Jefferson County District Court No. 18CR1985
Honorable Christie A. Bachmeyer, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Toni Theresa Torrez,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE JOHNSON
Navarro and Welling, JJ., concur

Announced February 8, 2024

---

Philip J. Weiser, Attorney General, Patrick A. Withers, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Taylor J. Hoy, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Jurors in Colorado take two oaths.  In the first, administered by the district court to prospective jurors, they vow to tell the truth during voir dire.  In the second, administered by the district court to the empaneled jurors, they attest that they will decide the case based on the evidence presented at trial and on the law the court gives them (empanelment oath).[1]  We address for the first time in Colorado whether structural error applies when a district court does not administer the empanelment oath to the jury and the jury renders a verdict.  We conclude that the district court's failure to administer the empanelment oath, when not objected to, is reviewed for plain error.

¶ 2    Defendant, Toni Theresa Torrez (Torrez), appeals her judgment of conviction entered by the district court on jury verdicts finding her guilty of two counts of first degree burglary, one count of attempted first degree assault, and one count of second degree assault.  The empaneled jurors never took the empanelment oath, and neither party brought this oversight to the court's attention.

---

[1] We acknowledge that county courts also administer oaths to prospective and empaneled jurors.  We use the term district court because this is the forum in which Torrez was tried and convicted.

But the overall trial record shows that the jury was otherwise properly instructed on the law and understood the gravity of the task before it. Accordingly, while we assume the error is obvious, it did not substantially undermine the proceedings so as to cast serious doubt on the reliability of the judgment. But we conclude that Torrez's convictions must merge into a single conviction of first degree burglary. Therefore, we affirm the judgment in part, vacate it in part, and remand the case to the district court to amend the mittimus.

## I. Background

¶ 3 Beginning late one night, Torrez and the victim — Torrez's friend Ramona Gilpin (Gilpin) — hung around various parts of town with some other friends. By early morning, Torrez and Gilpin had returned to Gilpin's apartment, and Gilpin had asked Torrez to leave. According to Gilpin, Torrez refused, and in the course of Gilpin's attempt to oust Torrez from the apartment, Torrez knocked Gilpin down and stabbed her repeatedly with a knife. Torrez was arrested and charged with two counts of first degree burglary, one count of attempted first degree assault, and one count of second degree assault.

¶ 4        The trial lasted two days.  Before voir dire, the court administered the first oath, and the entire venire swore to answer truthfully all the questions to assess juror qualifications.  Once the jury was empaneled, the court broke for lunch, saying "I'll swear the jury in when I get back."  But when the court reconvened the trial after lunch, it welcomed the jury back, gave it some orienting instructions, and proceeded to opening statements without swearing in the jury.  The court and parties never raised the issue of the court's failure to administer the empanelment oath following the lunch break or at any time thereafter.

¶ 5        The jury found Torrez guilty as charged and also determined that she had used a weapon during the crime.  The court sentenced Torrez to ten years in the custody of the Department of Corrections.

## II.    The Unsworn Jury

### A.    The Colorado Oath

¶ 6        Neither party disputes that the bailiff was sworn in before lunch and that the jurors took an oath before voir dire.[2]  The

---

[2] The voir dire oath says, "Do you solemnly swear or affirm under penalty of law to answer truthfully the questions asked by the Court or counsel concerning your service as a juror in this case?" COLJI-Crim. B:01 (2022).

suggested language that a district court should use when administering the empanelment oath is included in the recommended script for opening remarks in the model jury instructions.  *See* COLJI-Crim. B:01 (2022).  The empanelment oath, as set forth in Instruction B:01, states:

> Ladies and gentlemen, you have been selected as the jurors to try the case of "The People of the State of Colorado versus [ ]."  You now have duties in addition to your obligation to answer our questions truthfully, so I must now administer an additional oath to you.  Please stand and raise your right hands:
>
> Do you solemnly swear or affirm under penalty of law that you will well and truly try the matter before the court, and render a true verdict, according to the evidence and the law as I instruct you?  If so, please say, "I do."

¶ 7    On appeal, the parties agree that (1) the empaneled jury did not take this oath anytime during the trial or before deliberations and rendering its verdict, and (2) no Colorado case has directly dealt with this circumstance.

¶ 8    The closest that Colorado courts have come to addressing the circumstance we now face are situations in which the jury was sworn in — belatedly — after some evidence had been presented but before deliberations commenced.  *See People v. Smith*, 848 P.2d

4

365, 371 (Colo. 1993); *Hollis v. People*, 630 P.2d 68, 69 (Colo. 1981); *People v. Clouse*, 859 P.2d 228, 233 (Colo. App. 1992). In *Hollis*, our supreme court said that "[w]hile there is no explicit statute or rule requiring the administration of an oath to a jury in this state, the need for such an oath [has] been judicially recognized." 630 P.2d at 69. *Hollis* held that the late administration of the empanelment oath — after the prosecution's first witness had testified — did not constitute plain error. *Id.* at 70. In reaching this conclusion, the court in *Hollis* relied on *United States v. Hopkins*, 458 F.2d 1353 (5th Cir. 1972), which held that it was harmless error for the jury to be sworn in after the prosecution's case had been presented but before jury deliberations. *Hollis*, 630 P.2d at 69-70.

¶ 9     Twelve years later, our supreme court reaffirmed that the empanelment oath was "judicially recognized." *Smith*, 848 P.2d at 371. The venire in *Smith* took two oaths: one to answer the jury selection questions truthfully, which was given before voir dire, and one to "truly try the case," which was given after jurors were excused for challenges for cause but before the prosecution and defense counsel had exercised their peremptory challenges. *Id.* The

5

court in *Smith* noted that Colorado case law had "not articulated any guidelines as to when [the empanelment oath] must be administered." *Id.* Although noting that it is the "better practice" to swear in only the jurors who will hear the case, the court concluded that "the administration of the oath to the panel of jurors accepted for cause before the exercise of peremptory challenges d[id] not constitute reversible error." *Id.* at 372; *see also Clouse*, 859 P.2d at 233 (relying on *Hollis* in holding that there was no "possible prejudice" to the defendant when the jury was sworn in after two of the prosecution's witnesses had testified).

¶ 10    At minimum, the practice of swearing in the empaneled jury is "judicially recognized," *Hollis*, 630 P.2d at 69, which means that the court's failure to do so during Torrez's trial was error. The question then becomes what is the standard of reversal when reviewing such an error? Torrez acknowledges that she did not contemporaneously object to the court's failure to swear in the jury, but she argues that such an error "requires reversal even absent an objection" because the error is structural. Not surprisingly, the Attorney General contends that reversal is warranted only if the error is plain. We agree with the Attorney General.

## B. Applicable Law on Structural Error

¶ 11     Our supreme court has identified three standards of reversal applicable to  criminal convictions: "(1) structural error requiring automatic reversal; (2) error requiring reversal for violation of an express legislative mandate; and (3) trial error requiring reversal under an outcome-determinative analysis only if the error was not harmless." *People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 21; *see also People v. Novotny*, 2014 CO 18, ¶ 2 ("[R]eversal of a criminal conviction for other than structural error, in the absence of express legislative mandate or an appropriate case specific, outcome-determinative analysis, can no longer be sustained . . . .").

¶ 12     Adhering to the general rule that not all federal constitutional errors require automatic reversal, *Chapman v. California*, 386 U.S. 18, 22 (1967), the United States Supreme Court has applied a harmless error standard to a "wide range of errors and has recognized that most constitutional errors can be harmless," *Arizona v. Fulminante*, 499 U.S. 279, 305-06 (1991) (collecting cases).

¶ 13     Structural error is confined to errors "which require automatic reversal without individualized analysis of how the error impairs the

reliability of the judgment of conviction." *Hagos v. People*, 2012 CO 63, ¶ 10. In other words, for there to be structural error, the error must "infect the entire trial process," *Neder v. United States*, 527 U.S. 1, 8 (1999) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 630 (1993)), and "defy analysis by 'harmless error' standards," *id.* at 7 (quoting *Fulminante,* 499 U.S. at 309). A structural defect "affect[s] the framework within which the trial proceeds, [it is not] simply an error in the trial process itself." *Fulminante,* 499 U.S. at 310.

¶ 14    Therefore, structural error only applies to those constitutional rights that "[w]ithout th[o]se basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Id.* (quoting *Rose v. Clark,* 478 U.S. 570, 577-78 (1986)); *see People v. Barajas,* 2021 COA 98, ¶ 11 n.1 ("[W]e note that 'structural error' is a constitutional standard, not a statutory one." (quoting *Abu-Nantambu-El,* ¶¶ 21-25)). The Supreme Court has described its jurisprudence on structural error as follows: "[W]e have found an error to be 'structural,' and thus subject to automatic reversal, only in a 'very limited class of cases.'" *Neder,* 527 U.S. at 8 (quoting *Johnson v. United States*, 520 U.S. 461, 468

(1997)); *see also People v. Richardson*, 2018 COA 120, ¶ 40("We recognize that the 'class of error to which bright-line rules of reversal' apply has greatly narrowed." (quoting *Novotny*, ¶ 21)), *aff'd*, 2020 CO 46.[3]

¶ 15      Most errors, even of constitutional dimension, may be treated by reviewing courts as trial error, meaning it is an "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless." *Fulminante*, 499 U.S. at 307-08; *see also James v. People*, 2018 CO 72, ¶ 15 (reversing Colorado precedent that had previously held the presence of an alternate juror in the jury room

---

[3] The limited class of errors that the United States Supreme Court has found to be structural are: the total lack of defense counsel at trial, *see Gideon v. Wainwright*, 372 U.S. 335, 342-43 (1963); the lack of an impartial judge, *see Tumey v. Ohio*, 273 U.S. 510, 535 (1927); racial discrimination in selection of a grand jury, *see Vasquez v. Hillery*, 474 U.S. 254, 255-56 (1986); denial of self-representation at trial, *see McKaskle v. Wiggins*, 465 U.S. 168, 177-78 (1984); the denial of a public trial, *see Waller v. Georgia*, 467 U.S. 39, 49 (1984); a defective reasonable doubt instruction, *see Sullivan v. Louisiana*, 508 U.S. 275, 280-82 (1993); the total denial of a defendant's right to counsel of choice, *see United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006); and a defendant's right of autonomy to proclaim his innocence contrary to counsel's advice, *see McCoy v. Louisiana*, 584 U.S. 414, 422 (2018).

required automatic reversal because Colorado has "largely come to accept" the Supreme Court's view that most errors involving a constitutional right are reviewed under the constitutional harmless error analysis). And preserved trial errors are reviewed under constitutional harmless error or nonconstitutional harmless error standards, which "differ by the degree to which they require that the error impair the reliability of the judgment of conviction." *Hagos*, ¶ 9.[4]

¶ 16     This is why Colorado courts "review all other [nonstructural] errors, constitutional and nonconstitutional, that were not preserved by objection for plain error." *Id.* at ¶ 14; *cf. Howard-Walker v. People*, 2019 CO 69, ¶ 25 (distinguishing structural error from cumulative error, the latter of which requires that a reviewing court "identify multiple errors that collectively prejudice the substantial rights of the defendant, even if any single error does not").

---

[4] Constitutional harmless error analysis requires reversal of a conviction unless a court is "able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Hagos v. People*, 2012 CO 63, ¶ 11 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

¶ 17    As recognized in *Abu-Nantambu-El*, ¶ 21, automatic reversal may also be required "for violation of an express legislative mandate" when a statute dictates reversal as the remedy. *See also Novotny*, ¶ 26 (noting that the only circumstance requiring automatic reversal besides structural error is when there exists an "express legislative mandate").

¶ 18    *Abu-Nantambu-El*, ¶ 24, dealt with whether a violation of section 16-10-103(1)(k), C.R.S. 2023 — when a district court denies a defendant's challenge for cause to an impliedly biased juror who ultimately sits on the jury — requires automatic reversal because of an express legislative mandate. In holding that section 16-10-103(1)(k) is not an example of an express legislative mandate requiring automatic reversal, the court said the statutory provision is "silent on the remedy for a violation" because the language does not contain "any indication that the statute dictates a particular remedy." *Abu-Nantambu-El*, ¶ 25.

¶ 19    Both *Abu-Nantambu-El* and *Novotny*, however, pointed to Colorado's speedy trial statute, section 18-1-405(1), C.R.S. 2023, as an example of an express legislative mandate dictating a particular remedy. That provision states that if a defendant is not brought to

11

trial "within six months from the date of the entry of a plea of not guilty, he *shall be discharged* from custody . . . , the pending charges *shall be dismissed*, and the defendant *shall not again be indicted, informed against, or committed* for the same offense." § 18-1-405(1).

## C. Analysis

¶ 20 We must first decide whether having a sworn jury is (1) a federal constitutional right, the denial of which should be included in the very limited class of errors deemed structural error; or (2) a requirement of an express statutory provision that mandates automatic reversal as a remedy for its violation.[5] Because we

---

[5] Although Torrez references Colorado Constitution article II, sections 16 and 23, in her briefing to us, she has made no argument as to how the right to a fair and impartial jury under our state constitution differs from the analogous right protected by the federal constitution. *See, e.g., Exotic Coins, Inc. v. Beacom*, 699 P.2d 930, 943 (Colo. 1985) (although the parties cited the Colorado Constitution's search and seizure provision, the court declined to analyze a separate standard under the state provision when the parties raised no argument as to how the state provision differed from the federal one); *People v. Landis*, 2021 COA 92, ¶ 36 (concluding that when the parties have not identified a conceptual difference between the state constitutional right analysis and federal constitutional framework, we rely on the U.S. Constitution); *see also Sanchez v. Indus. Claim Appeals Off.*, 2017 COA 71, ¶ 41 (appellate courts do not address conclusory and underdeveloped

conclude that the right to a sworn jury satisfies neither of these criteria, we reject Torrez's claim that the court's failure to administer to the jury the empanelment oath requires automatic reversal of her conviction.  Instead, we review her contention for plain error.

### 1.    No Federal Constitutional Right

¶ 21    To even reach the question of structural error, we must first determine whether a sworn jury is a recognized federal constitutional right.  And then, even if such a right exists, because not all federal constitutional errors require automatic reversal, *Chapman*, 386 U.S. at 22, we would then need to apply the factors identified in *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017), to assess whether a violation of the constitutional right is structural error.  *Weaver* identified at least three rationales that the United States Supreme Court has relied on to include a particular constitutional error among the "very limited class of cases," *Neder*, 527 U.S. at 8 (quoting *Johnson*, 520 U.S. at 468), requiring

---

arguments).  Therefore, our analysis is solely confined to whether there is a federal constitutional right to a sworn jury and, if so, whether violation of that right is structural error.

automatic reversal. *Weaver*, 582 U.S. at 295-96. First, an error is structural "in some instances if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest." *Id.* at 295. Second, structural error has been applied to cases when "the effects of the error are simply too hard to measure." *Id.* And third, structural error may exist when the "error *always results* in fundamental unfairness." *Id.* at 296 (emphasis added).[6]

¶ 22    Torrez urges us to recognize a constitutional right to a sworn jury as it protects the right to a fair and impartial jury as

---

[6] Because *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017), was decided relatively recently, there is little Colorado case law applying its three categories. To date, it appears that no Colorado appellate court has applied *Weaver* to recognize a new federal constitutional error requiring automatic reversal. *See People v. Carter*, 2021 COA 29, ¶¶ 46-47 (applying *Weaver* categories to conclude that a constructive amendment is not structural error); *People v. Richardson*, 2018 COA 120, ¶ 40 (applying *Weaver* categories to conclude that the presence of the presiding judge's spouse on the jury did not constitute structural error). *But see Richardson v. People*, 2020 CO 46, ¶ 72 (Gabriel, J., dissenting) (relying on the second *Weaver* category — the error defies a harmless error analysis — to conclude that a defendant's right to a fair trial was violated when the presiding judge's wife sat on the jury because the defendant "could never show that the judge's conduct, in fact, caused the other jurors to defer to his wife" or "establish that the judge's conduct improperly influenced the independence of the jury").

14

guaranteed by the United States Constitution. U.S. Const. amends. V, VI, XIV. We decline to do so. Torrez has not cited, and we are not aware of, any controlling authority holding that a sworn jury is part of the federally protected right to a fair and impartial jury.

¶ 23    The United States Supreme Court has not recognized that a sworn jury is part of the constitutional right to a fair and impartial jury, although it has suggested that a sworn jury is relevant to that right. In *Lockhart v. McCree,* 476 U.S. 162, 165 (1986), the issue was whether a juror needed to be struck for cause due to the juror's opposition to the death penalty. In that context, the Court observed that "the Constitution presupposes that a jury selected from a fair cross section of the community is impartial . . . so long as the jurors can conscientiously and properly carry out their *sworn duty* to apply the law to the facts of the particular case." *Id.* at 184 (emphasis added).

¶ 24    And no federal court has recognized a constitutional right to a sworn jury. In *United States v. Turrietta,* 696 F.3d 972, 973 (10th Cir. 2012) — relied on by the Attorney General — the Tenth Circuit dealt with a situation in which defense counsel failed to raise an objection to the unsworn jury until after the guilty verdict was

reached.  Defense counsel admitted that he was aware the jury was unsworn, and his strategy was to wait for the verdict to decide whether to object.  *Id.* at 973 n.1.

¶ 25     Applying plain error review, the Tenth Circuit noted that it found no binding authority, "whether in the form of a constitutional provision, statute, rule, or judicial decision, addressing whether the Sixth Amendment right to trial by jury necessarily requires the jury be sworn."  *Id.* at 981.  And it concluded that "[n]o federal court in the history of American jurisprudence has held the constitutional guarantee of trial by jury to necessarily include trial by sworn jury."  *Id.* at 982.

¶ 26     In so ruling, the court in *Turrietta* reasoned that the handful of federal courts that have suggested the failure to swear in the jury would amount to an error do not agree as to the source of the error.  Specifically, the *Turrietta* court cited case law in which some courts pointed to the Sixth Amendment, *see Cooper v. Campbell*, 597 F.2d 628, 629 (8th Cir. 1979); others to the Fifth Amendment's Double Jeopardy Clause, *see United States v. Little Dog*, 398 F.3d 1032, 1036-37 (8th Cir. 2005); or still others to the "dignity or effectiveness which should attend federal court trials," *United States*

*v. Martin,* 740 F.2d 1352, 1358 (6th Cir. 1984).  *Turrietta,* 696 F.3d

at 982; *see also United States v. Pinero,* 948 F.2d 698, 700 (11th

Cir. 1991) ("[I]t is not clear from the caselaw whether juries in the

federal court system are required to be sworn in.").

¶ 27     Yet Torrez relies on *Ramos v. Louisiana,* 590 U.S. ___, 140 S.

Ct. 1390, 1397 (2020), to suggest that if the Supreme Court were

presented with the issue of whether the Sixth Amendment right to a

jury trial includes a right to a sworn jury, the Court would conclude

that it does.  The basis for her argument is that because *Ramos*

concluded that the Sixth Amendment right to a jury trial requires a

unanimous verdict, the Supreme Court continues to recognize new

rights of a federal constitutional dimension.

¶ 28     But Torrez assumes that if the Supreme Court recognizes a

federal constitutional right, then the Supreme Court would likewise

determine that the denial of that right is part of the limited class of

errors warranting automatic reversal.  Two aspects of *Ramos*'s

analysis cut against Torrez's prediction.  First, the opinion does not

contain the word "structural" or the phrase "automatic reversal."

*See id.*  Second, in recognizing that a right to a jury trial requires a

unanimous verdict, which the defendant's was not, *Ramos* said that

17

"[n]o one before us suggests that the error was harmless." *Id.* at

___, 140 S. Ct. at 1408. Given the Supreme Court's reluctance to

identify new constitutional errors that require automatic reversal,

the omission of any mention of "structural error" is telling.[7]

¶ 29　　　Torrez also relies on a litany of out-of-state cases to suggest

that other jurisdictions have held that the failure to swear in the

jury requires automatic reversal. This is true. But those cases

were decided under either a state constitutional provision, *see*

*People v. Moon*, 2022 IL 125959, ¶¶ 62, 64, 215 N.E.3d 58, 80-81

(holding that, as the state's highest court, it may depart from

federal structural error law, and that, given the "long and storied

history" of a sworn jury in the state's constitution, structural error

applies because the "failure to swear the jury with a trial oath is an

error of such gravity that it threatens the integrity of the judicial

process"); case law involving the right to a fair trial in the context of

---

[7] We struggle to imagine a scenario where the failure to swear in the jury, even if a sworn jury were recognized as part of the Sixth Amendment right to a jury trial, would actually be reviewed for constitutional harmless error. This is because such review would only apply if the claimed error were preserved, and once a party objects to a court's failure to administer the empanelment oath, it is implausible that a court would decline to administer it.

jury selection, *see Barral v. State*, 353 P.3d 1197, 1200 (Nev. 2015) (holding that the failure to administer the oath to prospective jurors constitutes structural error as it denies a criminal defendant their due process rights); or a state statutory provision, *see Spencer v. State*, 640 S.E.2d 267, 268 (Ga. 2007) ("[T]he failure to administer th[e] oath [required by state statute] to the trial jury requires the setting aside of any conviction based upon the decision of such an unsworn body and that there be a subsequent retrial.").

¶ 30     As primarily an error correction court, we are reluctant to recognize a new federal constitutional right without a strong indication that our supreme court is likely to recognize the possible existence of such a right. *See Richardson*, 2018 COA 120, ¶ 40 ("[A]s a court of error correction, it is not our prerogative to declare new classes of structural errors . . . ."). In declining to recognize a federal constitutional right to a sworn jury, we do not suggest that the empanelment oath is not important and should not be given to the jurors who will decide the case. But identifying a "judicially recognized" practice of swearing in a jury, as our supreme court did in *Hollis*, is a far cry from proclaiming that a sworn jury is essential to the federal constitutional right to a fair and impartial jury. Thus,

Torrez's conviction cannot be automatically reversed based on denial of a right that has not been given constitutional significance.[8]

### 2. No Statutory Right and Remedy

¶ 31    We further conclude that there is no express legislative mandate that requires automatic reversal as the remedy for an unsworn jury.  Torrez has not cited, nor are we aware of, any Colorado statute that recognizes a defendant's right to a sworn jury, much less any statutory provision that specifically mandates a jury to take an oath and requires reversal of a conviction if the court fails to administer one.

¶ 32    We acknowledge that there are statutory provisions — none of which the parties cite — that imply that a jury must take an oath. *See* § 16-10-105, C.R.S. 2023 ("Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, *shall take the same oath*, and shall have the same functions, powers, facilities, and privileges as the regular jurors.") (emphasis added); *cf.* § 13-72-

---

[8] Because we conclude that there is no federal constitutional right to a sworn jury, we need not address whether any of the structural error categories from *Weaver*, 582 U.S. at 295, apply.

105, C.R.S. 2023 (governing the swearing in of a grand jury foreperson and grand jury members before service commences).

¶ 33    But even if these provisions could be read as establishing a statutory right to a sworn jury — which they do not — the statutes do not contain an express legislative mandate that requires automatic reversal if the statute is violated. *See Abu-Nantambu-El*, ¶ 25.

¶ 34    Torrez also points us to the rules of criminal procedure to support her contention that there is a right to a sworn jury. True, *Hollis* recognized that such an empanelment oath requirement is implied in those rules. 630 P.2d at 69; *see* Crim. P. 23(a)(7) ("In any case in which a jury has been sworn to try a case, and any juror by reason of illness or other cause becomes unable to continue until a verdict is reached, the court may excuse such juror."); Crim. P. 24(b)(2) ("If either party desires to introduce evidence, other than the sworn responses of the prospective juror, for the purpose of establishing grounds to disqualify or challenge the juror for cause, such evidence shall be heard and all issues related thereto shall be determined by the court out of the presence of the other prospective

21

jurors."); Crim. P. 24(e) (using the same language about alternate jurors as set forth in section 16-10-105).

¶ 35    But again, those rules do not mandate automatic reversal if violated and, regardless, those rules are not express legislative mandates as described by *Abu-Nantambu-El*, ¶ 25.

¶ 36    We acknowledge that other state legislatures have passed laws specifically mandating that jurors must be sworn in once they are empaneled.[9]  Our General Assembly is free to enact such a statutory requirement and even expressly provide for automatic reversal of a criminal conviction if such a right is violated.  But we are not free to establish such a right or remedy simply because other states' legislatures have done so.  *See People v. Diaz*, 2015 CO 28, ¶ 15 ("[I]n interpreting a statute, we must accept the General

---

[9] Examples include Arizona and Mississippi.  Ariz. Rev. Stat. Ann. § 22-224 (2023) ("When the jury has been selected, the justice of the peace shall administer to it substantially the following oath: 'Do you swear or affirm that you will give careful attention to the proceedings, abide by the court's instructions and render a verdict in accordance with the law and evidence presented to you, so help you God.'"); Miss. Code Ann. § 13-5-71 (West 2023) ("Petit jurors shall be sworn in the following form: 'You, and each of you, do solemnly swear (or affirm) that you will well and truly try all issues and execute all writs of inquiry that may be submitted to you, or left to your decision by the court, during the present term, and true verdicts give according to the evidence.  So help you God.'").

Assembly's choice of language and not add or imply words that simply are not there." (quoting *People v. Benavidez*, 222 P.3d 391, 393-94 (Colo. App. 2009))); *Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo. 1994) (noting that a court "will not judicially legislate by reading a statute to accomplish something the plain language does not suggest").

¶ 37　　And some state courts have declined to apply structural error even when that state has a statute mandating a sworn jury.  In such cases, those courts have reviewed the issue for plain error when no objection was raised at trial.  *See, e.g.*, *State v. Vogh*, 41 P.3d 421, 428 (Or. Ct. App. 2002) (Even though Oregon has a state statute requiring the jury to take an oath, "[t]he oath does not stand alone as the sole procedure that guarantees that the jury will try the case based on the admissible evidence and applicable law.  To the contrary, numerous additional mechanisms serve the same purpose . . . ."); *People v. Cruz*, 113 Cal. Rptr. 2d 86, 89 (Ct. App. 2001) (stating that although the jury did not take the whole oath, that failure did not require automatic reversal because the jury "was not unmindful of its duty" and it was expressly instructed that

it must "render a verdict according to the instructions of the trial court," which the trial court said was its "duty").

¶ 38    Indeed, *People v. Cain*, 869 N.W.2d 829 (Mich. 2015) — a case neither party cited in their briefs — has similar facts to this case. The jurors in *Cain* were sworn in before voir dire to truthfully answer all questions about their qualifications to serve as jurors in the case, but they were never given the empanelment oath, as required by Michigan statute. *Id.* at 837-38. The Michigan Court of Appeals applied structural error, but the Michigan Supreme Court reversed, reviewing the issue for plain error and holding that the record "reveals that the error of failing to properly swear the jury did not undermine the proceedings with respect to the broader pursuits and values that the oath seeks to advance." *Id.* at 836.

¶ 39    In reaching this conclusion, *Cain* relied on the fact that the district court had instructed the jury on reasonable doubt, explained to the jurors their duties and responsibilities, and reminded the jurors to "[r]emember that [they] have taken an oath to return a true and just verdict based only on the evidence and [the court's] instructions on the law." *Id.* at 837. The *Cain* court acknowledged that these statements and instructions were not a

substitute for the oath, but it concluded the record showed that the trial court had been "vigilant" to remind the jury to act fairly and impartially. *Id.* at 838. In other words, the repeated instructions, although not an oath, indicated "that the jurors were conscious of the gravity of the task before them and the manner in which that task was to be carried out." *Id.* at 839.

¶ 40 Regardless of out-of-state authority, though, *Abu-Nantambu-El*, ¶ 25, governs, and because there is no Colorado statutory provision that mandates automatic reversal as a remedy when a defendant is found guilty by an unsworn jury, we do not apply structural error to Torrez's claim. Instead, we will review her contention for plain error.

### D. Plain Error Review

¶ 41 Plain error is error that is obvious and substantial. *Hagos,* ¶ 14. "In general, to be plain, an error must 'be so obvious' at the time it is made 'that a trial judge should be able to avoid it without the benefit of an objection.'" *Cardman v. People,* 2019 CO 73, ¶ 34 (quoting *Scott v. People,* 2017 CO 16, ¶ 16). For an error to be obvious, the action challenged on appeal ordinarily "must contravene (1) a clear statutory command; (2) a well-settled legal

25

principle; or (3) Colorado case law." *Id.* (quoting *Scott*, ¶ 16).  The

substantiality prong of plain error review requires the obvious error

to "so undermine[] the fundamental fairness of the trial itself so as

to cast serious doubt on the reliability of the judgment of

conviction."  *Id.* at ¶ 39 (quoting *Hagos*, ¶ 14).

¶ 42     We assume, without deciding, that the error was obvious, as

our supreme court in *Hollis* said that "the need for such an

[empanelment] oath ha[s] been judicially recognized."  630 P.2d at

69.

¶ 43     But was the obvious error substantial?  The courts in *Cruz,*

*Cain,* and *Vogh* — the out-of-state cases in which the courts applied

plain error review to the failure to follow a state law requiring a

sworn jury — looked at the trial records to discern whether, in the

absence of the timely empanelment oath, (1) the district court

provided sufficient instructions to the jury; (2) the instructions

conveyed the gravity and seriousness of the jury's task; and (3) the

record lacked any evidence of juror misconduct or other issues that

would suggest the jury was acting contrary to the requirements set

forth in the empanelment oath.

¶ 44    The record here shows that the district court, despite not administering the empanelment oath, provided substantial comments, instructions, and guidance that secured the fundamental fairness of Torrez's trial; thus, the error did not cast serious doubt on the reliability of the verdict. Such examples include the following:

- The court explained the prosecution's burden of proof, the reasonable doubt standard, and the presumption of innocence at least six times. For example, the court said, "The defendant is presumed to be innocent. Therefore, the prosecution has the burden of proving the charges beyond a reasonable doubt."

- There are also at least six instances when the court instructed the jury to decide the case based solely on the evidence presented, not to talk with the other jurors about the case until deliberations, and not to speak about the case or try to investigate any facts other than those presented in court. For example, the court said, "You still don't have all the evidence, and you haven't

27

heard closing arguments, and you don't know the instructions, so please don't discuss it."

- The court gave other instructions throughout, such as those explaining the defendant's right not to testify, that the court would give the jury the law that it had to apply, and that the verdict needed to be unanimous. Specifically, at one point, the court said, "[I]t is my job to decide what rules or law apply to the case. You must follow all the rules as I explain them to you. You cannot follow some and ignore others. Even if you disagree or do not understand the reasons for some of the rules, you must follow them."

- The court obtained acknowledgment from the jurors after it said, "Everyone understand our civics lesson? Can everybody follow those basic rules? Everybody is shaking their head yes."

¶ 45 Other factors that support our conclusion that the failure to swear in the jury in this case was not plain error include: (1) the trial was only two days long, so the number of jury instructions in relation to the length of the trial is significant; (2) Torrez has not

28

raised any other trial error that would call into question the reliability of the judgment; (3) the court thoroughly went through the jury instructions with the parties and even asked if there were any other instructions or objections to consider, to which defense counsel said no; and (4) Jury Instruction No. 1 directed the jurors to decide the case based on the evidence presented to them in court and that their verdict had to be based solely on jury deliberations and not outside individuals or materials. *See Galvan v. People*, 2020 CO 82, ¶ 29 (appellate courts must presume that the jury followed the court's instructions). On this record, we discern no plain error resulting from the court's failure to administer the empanelment oath.

## III. Merger

¶ 46 Torrez contends, the Attorney General concedes, and we agree that Torrez's convictions should merge into one count of first degree burglary.

### A. Standard of Review and Applicable Law

¶ 47 We review de novo a claim that a defendant's conviction violates her protection against double jeopardy. *People v. Lowe*, 2020 COA 116, ¶ 38.

¶ 48    The double jeopardy clause protects defendants from multiplicity, which "is the charging of multiple counts and the imposition of multiple punishments for the same criminal conduct," unless the General Assembly authorizes it.  *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005).

¶ 49    Multiple convictions not based on distinguishable acts must merge.  *Id.* at 220.  But double jeopardy does not bar multiple convictions under the same statute if the defendant committed the offense more than once.  *See People v. Rock*, 2017 CO 84, ¶ 17.  A defendant may be charged more than once under the same statute when (1) "the unit of prosecution prescribed by the legislature permits the charging of multiple offenses," and (2) "the evidence in support of each offense justifies the charging of distinct offenses." *Quintano v. People*, 105 P.3d 585, 590 (Colo. 2005); *see People v. Williams*, 651 P.2d 899, 902-03 (Colo. 1982) (citing *Sanabria v. United States*, 437 U.S. 54 (1978)).

## B.    Analysis

¶ 50    As mentioned previously, Torrez was convicted of two counts of first degree burglary, one count of attempted first degree assault, and one count of second degree assault.  During the sentencing

30

hearing, the district court and parties agreed that both of Torrez's convictions for attempted first degree assault and second degree assault should merge into the burglary convictions. We agree.

¶ 51 One element of first degree burglary requires proof that "the person or another participant in the crime assault[ed] or menace[d] any person." § 18-4-202, C.R.S. 2023. There is no dispute that the assault convictions arose from the same factual incident when Torrez stabbed the victim with the knife. That is, both the attempted first degree assault count and the second degree assault count were based on Torrez's causing bodily injury to the victim; they differed only as to whether Torrez intended to cause serious bodily injury or simply bodily injury. *See* § 18-3-202(1)(a), C.R.S. 2023 (A person commits the crime of assault in the first degree if "[w]ith intent to cause serious bodily injury to another person, [s]he causes serious bodily injury to any person by means of a deadly weapon."); § 18-3-203(1)(b), C.R.S. 2023 (A person commits second degree assault if "[w]ith intent to cause bodily injury to another person, he or she causes such injury to any person by means of a deadly weapon.").

31

¶ 52    Therefore, because one of Torrez's first degree burglary convictions was premised on this one assault, she necessarily committed the lesser included offenses of attempted first degree assault and second degree assault.  The lesser included offenses must merge into the greater.  *See Reyna-Abarca v. People*, 2017 CO 15, ¶ 65 (double jeopardy is violated when a defendant is convicted of both a greater offense and a lesser included offense for the same conduct); *Page v. People*, 2017 CO 88, ¶ 9 (the conviction of the lesser included offense must merge into the greater offense); *Litwinsky v. Zavares*, 132 F. Supp. 2d 1316, 1319 (D. Colo. 2001) ("Where assault is the predicate offense, the elements of first-degree burglary necessarily include all of the elements of assault.  Thus, . . . assault is clearly a lesser-included offense of first-degree burglary when assault is the predicate offense.").

¶ 53    The parties at the sentencing hearing also agreed that Torrez's two first degree burglary convictions should merge into a single conviction.  The district court suggested that there might be sufficient facts showing two distinct episodes of first degree burglary.  It said that the first episode could have occurred when Torrez "came to the house, . . . was asked to leave, [but] she refused

32

to." And the second incident the court surmised was when Torrez was pushed outside, the victim tried to shut the door, and Torrez reentered the apartment and began to stab the victim. But the court also noted that the charges could be merged "because [it did not] think there [were] two different criminal episodes here, even though there's two burglaries."

¶ 54    We agree that Torrez's two burglary convictions must also merge into one single conviction. Jury Instruction Nos. 13 and 14 listed the two burglary counts as Burglary (Armed with a Deadly Weapon) and Burglary (Assault), respectively. Torrez committed first degree burglary when, in addition to committing the other elements of the offense, she assaulted the victim with the knife, which was considered a deadly weapon. Torrez's initial refusal to leave the victim's apartment was not a distinct act of first degree burglary from the first degree burglary when Torrez then assaulted the victim with a deadly weapon (the knife). Both incidents occurred within the same occupied structure, and the prosecution did not treat the two burglary counts as factually distinct acts. Rather, the two counts reflected alternative methods of committing the same first degree burglary.

¶ 55    The district court indicated that it would merge all of Torrez's convictions into one count of first degree burglary.  But the mittimus reflects four separate convictions and four separate sentences.  It also noted at that "ALL COUNTS RUN CONCURRENTLY AND MERGE FOR PURPOSES OF SENTENCING." We agree with Torrez that, despite the district court noting that the sentences for all four convictions run concurrently with each other, the multiple convictions and sentences nonetheless violate double jeopardy because the mittimus should reflect a single conviction of first degree burglary and a single sentence for that conviction.  *See Ball v. United States*, 470 U.S. 856, 865 (1985) (recognizing that a second conviction that should be merged is not remedied by a concurrent sentence because the additional conviction could have collateral consequences involving parole eligibility or impeachment in a separate proceeding).

¶ 56    Therefore, on remand, the district court must amend Torrez's mittimus to reflect a single conviction of first degree burglary with an imposed ten-year sentence in the custody of the Department of Corrections.

## IV.    Conclusion

¶ 57    The judgment of conviction is affirmed in part and vacated in part.  The convictions for the second count of first degree burglary, the one count of attempted first degree assault, and the one count of second degree assault are vacated, as they are merged into a single conviction of first degree burglary.  The remaining first degree burglary conviction is affirmed.  The case is remanded to the district court to amend the mittimus consistent with this opinion.

JUDGE NAVARRO and JUDGE WELLING concur.